IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| TOMMY LEE WILSON,<br># 225500, | ) | |
| | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. |
| | ) | 3:06-CV-751-WKW |
| | ) | |
| RALPH HOOKS, et al., | ) | |
| | ) | |
| Respondents. | ) | |

**RESPONDENTS' ANSWER TO COURT'S ORDER
TO SHOW CAUSE**

Come now Respondents, by and through the Attorney General of the State of

Alabama, and file their answer in response to this Court's Order to Show Cause

dated August 25, 2006.  In support of their answer, Respondents have filed a

memorandum brief and supporting exhibits.

Petitioner, Tommy Lee Wilson (Wilson), was initially convicted of two

counts of capital murder and was sentenced to life without parole. (Exhibit A)

Wilson's convictions and sentences were affirmed on appeal in a memorandum

decision dated June 20, 2003. (Exhibit A-1)  Certificate of judgment was issued on

November 7, 2003. (Exhibit A-2)

On January 26, 2004, Wilson filed a Rule 32 petition in the Chambers County Circuit Court challenging his two capital murder convictions and resulting life without parole sentences. (Exhibit B)  In his Rule 32 petition, Wilson alleged the Constitution of the United States or the State of Alabama required he receive a new trial, new sentence proceeding, or other relief, because his convictions were obtained by the use of a coerced confession; convictions obtained by use of evidence gained pursuant to an unconstitutional search and seizure; convictions obtained by use of evidence obtained pursuant to an unlawful arrest; convictions obtained by violation of protection against double jeopardy; and, he was denied effective assistance of counsel. (Exhibit B)  Wilson also alleged newly discovered material facts existed that required his conviction and sentence be vacated by the court. (Exhibit B)  Wilson filed a memorandum with exhibits in support of his Rule 32 petition further discussing his issues. (Exhibit B)

On May 19, 2005, Circuit Judge Howard F. Bryan entered an order denying and dismissing Wilson's Rule 32 petition.  Judge Bryan ruled that Wilson's claims were barred from Rule 32 relief, because the issues should have been raised at trial or on direct appeal. (Exhibit B)

On June 2, 2005, Wilson gave notice of appeal.  On appeal, the denial of Wilson's Rule 32 petition was affirmed in a memorandum decision dated October

21, 2005, by the Alabama Court of Criminal Appeals. (Exhibit B-1)  Certificate of

judgment was issued on January 13, 2006. (Exhibit B-2)

## WILSON'S FEDERAL HABEAS CLAIMS

On August 3, 2006, Wilson filed the present petition for writ of habeas

corpus in this Court.  Wilson presents the following issues for this Court's review:

1.    Sufficiency of Evidence;

2.    Denial of effective assistance of counsel; and

3.    Newly discovered evidence.

On August 25, 2006, this Court entered an order requiring Respondents to show

cause why Wilson's federal writ of habeas corpus petition should not be granted.

## ANSWER TO THE PETITION

1.    Respondents admit Wilson is being held in the State penitentiary

pursuant to two lawful convictions for capital murder with resulting life without

parole sentences, to run concurrently.  Wilson's convictions and sentences were

entered in the Circuit Court of Chambers County, Alabama.

2.    Respondents deny any of Wilson's rights under the Constitution of the

United States or under any federal treaty have been abridged.

3.    Respondents deny each and every allegation contained in the petition.

4.    Wilson's newly discovered evidence claim is procedurally defaulted.

5.    Wilson's claim regarding sufficiency of the evidence lacks merit.

6.    Wilson's ineffective assistance of counsel claim is meritless.


**MEMORANDUM BRIEF**
**IN SUPPORT OF ANSWER**

I.    Exhaustion

Respondents submit Wilson has exhausted his state court remedies, for the claims he presents for federal habeas review.


II.    Statute of Limitation

Wilson's federal writ of habeas corpus petition does not appear to be filed in violation of the one-year statute of limitation. Wilson's convictions and sentences were final on November 7, 2003, when the Supreme Court of Alabama denied his petition for certiorari review. (Exhibit A-2) On January 26, 2004, Wilson timely filed a Rule 32 petition pursuant to Rule 32 of the Alabama Rules of Criminal Procedure (ARCrP), attacking his convictions and sentences. This allowed Wilson to take advantage of the tolling provision of §28 U.S.C. 2244(d)(2). The denial of Wilson's Rule 32 petition was final on January 13, 2006, with the issuance of the certificate of judgment, by the Alabama Court of Criminal Appeals. On August 23, 2006, Wilson timely filed the present writ of habeas corpus petition.

4

III.    Procedural Default

This Court is barred from reaching the merits of Wilson's newly discovered evidence claim based upon possible false testimony of witness Darcell Brown. Wilson failed to comply with independent and adequate state procedural rules. Wainwright v. Sykes, 433 U.S. 72, 78 (1977). To overcome this procedural violation, Wilson must show adequate "cause" for and "actual prejudice" from the default. Wainwright, at 78; Wilson v. Jones, 902 F.2d 923, 925 (11th Cir. 1990). The cause and prejudice test is conjunctive requiring Wilson to prove both "cause and prejudice." Amadeo v. Zant, 486 U.S. 214, 108 S. Ct. 1771, 1775 (1988). Moreover, Wilson should make some showing that the alleged errors at trial created a possibility of prejudice, and that they worked to her actual and substantial disadvantage. United States v. Frady, 456 U.S. 152, 170, 102 S. Ct. 1584, 1595 (1982).

Wilson's claim of false testimony, should have been raised during his trial or on direct appeal. This claim was not cognizable in Wilson's Rule 32 proceeding as stated by Judge Bryan. (Exhibit B) Rule 32.2(a)(3),(5), ARCrP, provides claims that should have been raised at trial or on direct appeal are not cognizable in a Rule 32 petition. Hence, Wilson's failure to properly present his claim in state court prevents further review. Moreover, the Court of Criminal Appeals held Wilson's

5

newly discovered evidence claim was not properly pled with specificity as required

by Rule 32.6, ARCrP. (Exhibit B-1) In <u>Wallace v. State</u>, CR-05-0351, 2006 WL

2788969 (Ala. Crim. App., Sept. 29, 2006), * at 3, the Court of Criminal Appeals

held the failure to sufficiently plead a claim can be a procedural bar to relief of the

claim. Thus, Wilson's failure to properly present his claim in state court prevents

further review.


**IV.    Sufficiency of Evidence**

Wilson claims the evidence was insufficient to support his convictions,

because the State failed to present sufficient evidence to coorborate his

accomplice's testimony. On the contrary, the evidence was overwhelming of

Wilson's guilt. The Alabama Court of Criminal Appeals specifically held the

evidence to be sufficient. <u>See</u> Exhibit A-1 The Court of Criminal Appeals set

forth the facts supporting Wilson's capital murder convictions. (Exhibit A-1)

The facts supporting Wilson's convictions are documented in the transcript

and are entitled to a presumption of correctness absent proof of one or more of the

factors set forth in 28 U.S.C. §2254(d)(1) – (8). <u>Sumner v. Mata</u>, 449 U.S. 539

(1981). Further, when a habeas corpus claim is grounded in the sufficiency of the

evidence, the principle question is "whether, after viewing the evidence in the light

most favorable to the prosecution, any rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 449 U.S. 307 (1979). This test is the same whether the evidence is circumstantial or direct. United States v. Staller, 616 F.2d 1285 (5th Cir.), cert. denied, 449 U.S. 896 (1980).

Finally, Wilson sets forth his general assessment of the facts that failed to establish his guilt. The jury, however, was called upon to make the very factual determinations Wilson now seeks to have re-examined by this Court. A jury's resolution of factual disputes should not be disturbed absent compelling circumstances, which are not present in this case. United States v. Hollifield, 870 F.2d 574 (11th Cir. 1989). A review of the trial transcript and the Court of Criminal Appeals's opinion reveals that any rational trier of fact could have found Wilson guilty, when the evidence is viewed in the light most favorable to the prosecution, as required. Hence, Wilson's sufficiency of the evidence claim lacks merit.

## V.     Effective Assistance of Counsel

Wilson alleges he was denied effective assistance of counsel from his trial and appellate attorneys. Based upon the record, Wilson's claims are meritless.

To sustain a challenge of ineffective assistance of counsel, Wilson must show the assistance rendered by his trial counsel was constitutionally ineffective. A claim of ineffective assistance of counsel is to be analyzed according to the

7

guidelines of <u>Strickland v. Washington</u>, 466 U. S. 668, 105 S. Ct. 2052 (1984). In

<u>Strickland</u>, the United States Supreme Court established the standards that must be

met before a claim of ineffective assistance of counsel can be proved. There must

first be a finding that acts or omissions of counsel amounted to actual ineffective

assistance. With regard to ineffective assistance, the <u>Strickland</u> Court stated:

> A convicted defendant making a claim of ineffective assistance must
> identify the acts or omissions of counsel that are alleged not to have
> been the result of reasonable professional judgment. The court must
> then determine whether, in light of all the circumstances, the
> identified acts or omissions were outside the wide range of
> professionally competent assistance. In making that determination,
> the court should keep in mind that counsel's function, as elaborated in
> prevailing professional norms, is to make the adversarial testing
> process work in the particular case. At the same time, the court
> should recognize that counsel is strongly presumed to have rendered
> adequate assistance and made all significant decisions in the exercise
> of reasonable professional judgment.

466 U. S. at 690.

Second, to constitute a violation of a defendant's Sixth Amendment right to

effective counsel, a showing of prejudice must be made. The defendant's burden

was explained in <u>Strickland</u> as follows:

> The defendant must show that there is a reasonable probability that,
> but for counsel's unprofessional errors, the result of the proceeding
> would have been different. A reasonable probability is a probability
> sufficient to undermine confidence in the outcome.

466 U. S. at 694. Thus, to sustain a claim for ineffective assistance of counsel, it is

necessary to show both professional error and prejudice to the defense.

Wilson claims his trial and appellate attorneys were ineffective. Specifically he alleges counsel failed to investigate, call witnesses, and was not prepared for trial. Wilson's claims are general allegations of trial strategy. Claims of trial strategy do not alone constitute ineffective assistance of counsel. Ex parte Arthur, 711 So. 2d 1097, 1100 (Ala. 1997). A review of the record reveals that Wilson's trial and appellate attorney's were not ineffective in their representation. Moreover, Wilson has not met his burden of proof under Strickland. Wilson has not shown that the outcome would have been different had his trial and appellate attorneys done the things he now claims they should have done. Therefore, Wilson's ineffective assistance of counsel claim is meritless.

## EXHIBITS

A -    Trial transcript in CC-00-74[1].

A-1 - Court of Criminal Appeals's decision in CR-02-0852.

A-2 - Certificate of Judgment from the Alabama Supreme Court denying Writ of Certiorari.

B -    Wilson's Rule 32 Petition in CR-04-1746.

B-1 - Court of Criminal Appeals's dismissal of Wilson's Rule 32 appeal.

B-2 - Court of Criminal Appeals's  Certificate of Judgment in CR-04-1746.

Respectfully submitted,

s/Yvonne A. H. Saxon (Sax003)
Yvonne A. H. Saxon (Sax003)
Office of the Attorney General
Alabama State House
11 South Union
Montgomery, AL  36130-0152
Telephone:  (334)  242-7300
Fax:  (334)  242-2848
E-Mail: ysaxon@ago.state.al.us

---

[1] Due to the voluminous nature of the Exhibit, the  exhibit will be filed under separate cover.

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of October, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants: <u>Tommy Lee Wilson, AIS #225500, St. Clair Correctional Facility, 1000 St. Clair Rd, Springville, Alabama 35146-9790</u>.

Respectfully submitted,

s/Yvonne A. H. Saxon (Sax003)
Yvonne A. H. Saxon (Sax003)
Office of the Attorney General
Alabama State House
11 South Union
Montgomery, AL 36130-0152
Telephone: (334) 242-7300
Fax: (334) 242-2848
E-Mail: ysaxon@ago.state.al.us

189715/99065-001

# Court of Criminal Appeals

State of Alabama
Judicial Building, 300 Dexter Avenue
**P. O. Box 301555**
**Montgomery, AL 36130-1555**

H.W."BUCKY" McMILLAN
Presiding Judge
SUE BELL COBB
PAMELA W. BASCHAB
GREG SHAW
A. KELLI WISE
Judges



RELEASED

JUN 2 0 2003

CLERK
APP COURT CRIMINAL APPEALS

Lane W. Mann
Clerk
Wanda K. Ivey
Assistant Clerk
(334) 242-4590
Fax (334) 242-4689

## MEMORANDUM

CR-02-0852                    Chambers Circuit Court CC-00-74

Tommy Lee Wilson, alias v. State of Alabama

Baschab, Judge.

The appellant was convicted of murder made capital
because he committed it during the commission of a first-
degree robbery, a violation of §13A-5-40(a)(2), Ala. Code
1975, and murder made capital because he committed it by or
through the use of a deadly weapon fired or otherwise used
from outside of a dwelling while the victim was in a dwelling,
a violation of §13A-5-40(a)(16), Ala. Code 1975. The trial
court sentenced him to imprisonment for life without the
possibility of parole. The appellant filed a motion for a new
trial, which the trial court summarily denied. This appeal
followed.

The appellant argues that the State did not present
sufficient evidence to support his convictions. Specifically,
he contends that his convictions were based solely upon the
uncorroborated testimony of his accomplice, Darcell Brown.

"A conviction of felony cannot be had on the



PENGAD 800-631-6989

EXHIBIT

A-1

testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient."

§12-21-222, Ala. Code 1975.

"'An accomplice's testimony must be supported by evidence connecting the defendant with the commission of the offense rather than merely showing that the offense occurred or the circumstances thereof. Code of Alabama 1975, §12-21-222; Miles v. State, 476 So. 2d 1228 (Ala. Cr. App. 1985); Jackson v. State, 451 So. 2d 435 (Ala. Cr. App. 1984).' Hodges v. State, 500 So. 2d 1273, 1275 (Ala. Cr. App. 1986).

"'"Corroboration need only be slight to suffice." Ingle v. State, 400 So. 2d 938, 940 (Ala. Cr. App. 1981). "While corroborating evidence need not be strong, it '... must be of substantive character, must be inconsistent with the innocence of a defendant and must do more than raise a suspicion of guilt.' McCoy v. State, 397 So. 2d 577 (Ala. Crim. App.), cert. denied, 397 So. 2d 589 (Ala. 1981)." Booker v. State, 477 So. 2d 1388, 1390 (Ala. Cr. App. 1985). "However, the corroboration need not be sufficiently strong by itself to warrant a conviction." Miles v. State, 476 So. 2d 1228, 1234 (Ala. Cr. App. 1985). The requisite corroborative evidence is determined by a process of elimination or subtraction. Caldwell v. State, 418 So. 2d 168, 170 (Ala. Cr. App. 1981). "The means for analyzing the evidence to determine if there is sufficient evidence to corroborate testimony of an accomplice is to set aside the accomplice's testimony and determine whether or not the remaining evidence tends to connect the defendant with the

2

commission of the offense." <u>Leonard v. State</u>, 459 So. 2d 970, 971 (Ala. Cr. App. 1984).    "Whether such corroborative evidence exists is a question of law to be resolved by the trial court, its probative force and sufficiency being questions for the jury." <u>Caldwell v. State</u>, supra, at 170. Circumstantial evidence is sufficient to show corroboration. <u>Jackson v. State</u>, 451 So. 2d 435, 437 (Ala. Cr. App. 1984). See also <u>McConnell v. State</u>, 429 So. 2d 662 (Ala. Cr. App. 1983).'

"<u>Hodges v. State</u>, 500 So. 2d at 1275-76.

"In <u>Ware v. State</u>, 409 So. 2d 886 (Ala. Cr. App. 1981), writ quashed, 409 So. 2d 893 (Ala. 1982), this court quoted <u>Andrews v. State</u>, 370 So. 2d 320, 322 (Ala. Cr. App.), cert. denied, 370 So. 2d 323 (Ala. 1979), stating:

"'"The corroboration of an accomplice must tend to connect the accused with the commission of the crime but need not refer to any statement or fact testified to by the accomplice.    'Corroborate means to strengthen, to make stronger; to strengthen, not the proof of any particular fact to which the witness has testified, but to strengthen the probative, criminating force of his testimony.' <u>Malachi v. State</u>, 89 Ala. 134, 140-141, 8 So. 104, 106 (1889); <u>Smith v. State</u>, 230 Ala. 413, 416, 151 So. 538 (1935); <u>Brown v. State</u>, 31 Ala. App. 529, 19 So. 2d 88 (1944).    The corroborative evidence need not be strong, nor sufficient of itself to support a conviction, the criterion being that it legitimately tend to connect the accused with the offense. <u>Miller v. State</u>, 290 Ala. 248, 275 So. 2d 675 (1973). Corroborative evidence need not directly confirm any particular fact nor go to every material fact stated by the accomplice.

3

Bridges v. State, 52 Ala. App. 546, 295 So.
2d 266 (1974); Dykes v. State, 30 Ala. App.
129, 1 So. 2d 754 (1941). Corroborative
evidence need not directly connect the
accused with the offense but need only tend
to do so. State v. Canada, 107 Ariz. 66,
481 P.2d 859, cert. denied, 404 U.S. 848,
92 S. Ct. 154, 30 L. Ed. 2d 87 (1971). See
Pearce v. State, 26 Ala. App. 492, 495, 164
So. 114, cert. denied, 231 Ala. 150, 164
So. 118 (1935) ('(B)ut, as we read the
cases, the corroboratory evidence, if it
meets the test of "tending to connect the
defendant with the commission of the
offense," need not be, in and of itself
alone, that tending in any wise to fasten
guilt upon the defendant'); 23 C.J.S.
Criminal Law §812(3) (1961). The
sufficiency of corroborating evidence is
established if its probative value tends to
connect the defendant with the commission
of the crime. Lowe v. State, 32 Ala. App.
176, 22 So. 2d 618 (1945). The
corroboration of an accomplice may be shown
by circumstantial evidence. Blevins v.
State, 56 Ala. App. 115, 319 So. 2d 734,
cert. denied, 294 Ala. 753, 319 So. 2d 739
(1975); Tidwell v. State, 23 Ala. App. 409,
126 So. 186 (1930).

    "'In certain instances, association
with the accomplice tending to show the
accused's proximity, chronologically and
geographically, to the alleged offense may
furnish sufficient corroboration. Ross v.
State, 74 Ala. 532 (1883); DeGraaf v.
State, 34 Ala. App. 137, 37 So. 2d 130
(1948)." 370 So. 2d at 322.'

"409 So. 2d at 891.

    "Thus, to constitute sufficient corroboration,
a fact or circumstance may tend to support the
accomplice's version, thereby confirming his

4

credibility, but in order to provide sufficient corroboration of accomplice testimony, the evidence must connect the accused with the commission of the offense. Jackson v. State, 451 So. 2d 435, 437 (Ala. Cr. App. 1984)."

Arthur v. State, 711 So. 2d 1031, 1059-60 (Ala. Crim. App. 1996), aff'd, 711 So. 2d 1097 (Ala. 1997). "'Additionally, sufficient corroboration of the testimony of an accomplice may be furnished by a tacit admission by the accused, by the suspicious conduct of the accused, and the association of the accused with the accomplice, or by the defendant's proximity and opportunity to commit the crime.'" Ware v. State, 409 So. 2d 886, 891 (Ala. Crim. App. 1981) (quoting Jacks v. State, 364 So. 2d 397, 405 (Ala. Crim. App. 1978).

The State presented evidence that, around 1:57 a.m. on August 8, 1999, the victim, Betty Weaver, got off of work at the Spectrum 24 Store; that the daughter of one of the victim's neighbor's heard a loud noise between 2:00 and 2:30 a.m.; that, when the neighbor's daughter looked out of the window, she saw that the victim's porch light was on and saw the victim's vehicle; and that, around noon, the Lanett Police Department received a request for a welfare check on the victim because the victim was not at church that morning.

Officer Jonathan Kent of the Lanett Police Department testified that he received a dispatch for a welfare check; that, when he arrived at the victim's residence, he saw the victim's vehicle in the driveway and noticed that the rear screen door on the victim's house was partially pushed in; that he knocked on the victim's back door; that he did not get a response; that he went to a neighbor's house and got a key to the victim's house; that he unlocked the rear door; that, when he pushed the rear door, it opened approximately one foot and then struck the victim's body; that he called the victim's name, but did not get a response; that he reached inside and touched the victim's cheek; and that the victim's skin was cold and stiff. He also testified that he called his supervisor and medical personnel. Subsequently, one of the medics entered through the opening in the rear door and unlocked the front door. Kent entered through the front door of the house and went to the kitchen area. The victim was lying face down in a pool of blood.

Forensic scientists with the Alabama Department of Forensic Sciences processed the crime scene and found keys in the victim's hands and a purse that appeared to have a hole from a gunshot near the victim's body.

Ishmael Walker testified that his nickname was "Moochy;" that, in August 1999, he lived with his stepmother across from Ebeneezer Church; that, during the early morning hours of August 8, 1999, he was standing outside on the porch; that he saw the appellant and Rodriguez Heard, whose nickname was Rock; that the appellant and Heard were walking in the middle of street and talking; that he walked toward them; that Heard told the appellant, "'[D]on't be ... bull shitting me,'" and the appellant said he was not; that a black man in a blue four door vehicle pulled up; that the appellant got into the vehicle; that Heard went into the bushes and got a black gun with pistol grips; that Heard was dressed all in black; that Heard then got into the vehicle; and that the three men drove off. (R. 197, 203.)

Dexter Gibson testified that he lived in the area near Ray Bell's convenience store; that, late on the night of August 7, 1999, or early in the morning of August 8, 1999, he saw the appellant in front of Ray Bell's; that the appellant had walked to Ray Bell's; that the appellant stopped him and told him that something was going down, that some lady was being robbed, and that Heard had just shot through a door; that he and the appellant walked down the street about 200 yards; that a blue vehicle pulled up; that Darcell Brown was driving the vehicle; that Brown asked the appellant why he had left; that Heard then walked up; that Heard had a black, pistol-grip, pump, 12-gauge shotgun; that Heard asked him if he wanted to go rob somebody in Lafayette; that he told Heard he did not; that Heard told him that he had just shot through a door; that Heard asked Brown why he had left him; and that they all subsequently left and went their separate ways.

Detective Thomas Sims of the Lanett Police Department testified that he went to the victim's residence; that, at some point, Major Ricky Billingsley told him to come with him to Chief Ben Brown's location; that they went to the driveway of the church next door; that the appellant and Warren Smallwood were with Chief Brown; that the appellant told Chief Brown he would give them information about what had happened

6

if they would take him from the area; and that he and Chief
Brown took the appellant to the police department.  He also
testified that he subsequently got consent to search Rodriguez
Heard's brother's residence; that the residence was a couple
of hundred yards from Bell's store; and that Billingsley found
a shotgun and three shotgun shells under a couch in the
residence.

Ricky Billingsley testified that, before October 2000, he
was a major at the Lanett Police Department; that, on Sunday,
August 8, 1999, he arrived at the victim's residence around
2:30 p.m.; that the victim's body was curled up in a fetal
position in front of the back door; that he saw the victim's
purse in front of the victim and it appeared to have been
shot; that the wire on the rear screen door was torn away from
the center wood framing; that he subsequently went outside and
received a message from Chief Brown; that he went to the
parking lot of a church next door; that, when he got there, he
saw the appellant and Chief Brown; that the appellant said,
"'I tell you who shot the lady, but I need a ride out of
here;'" that he told him they would give him a ride, but he
needed to tell them who had shot the victim; that the
appellant said, "'[T]hey shot her with a shotgun;'"  that,
when they asked him who, he said, "'[A] guy named Rock or Rod
or something like that;'" that, when he asked the appellant if
he was trying to say "Rodriguez," the appellant said,
"'[Y]eah, that's it;'" that, when they asked, "'Rodriguez
who?'", the appellant said that he did not know, but that his
brother was "Nock;" that, when Sims arrived, he asked him if
he knew who "Nock" was, and Sims said, "[Y]eah, Nock Heard;"
and that, when he asked the appellant if it was "Nock" Heard
and Rodriguez Heard, the appellant said that that was who it
was.  (R. 264, 265, 266.)  Subsequently, Chief Brown told Sims
to get his truck, put the appellant in it, take the appellant
to the police department, and not to tell anyone what he was
doing.  Billingsley testified that, later that evening, he
went to Rodriguez Heard's brother's house; that Heard's
brother told them that Heard slept on the couch; and that he
found a black, 500 Series Mossberg pump shotgun with pistol
grips and three shotgun shells under the couch.

Ben Brown testified that, in 1999, he was the Chief of
Police of the Lanett Police Department; that, on Sunday,
August 8, 1999, he received a telephone call from his

department regarding an incident at the victim's house; that he went to the victim's house; that, at some point that afternoon, Warren Smallwood, a man who lived in the general area, got his attention; that he approached Smallwood; that the appellant was standing beside Smallwood; that Smallwood said, "'Chief, he wants to talk to you;'" that the appellant said that he knew who had killed the victim; that the appellant told him it was more than one person, that the people were young, and that the people had used a sawed-off shotgun with dark pistol grips; that the appellant acted nervous and said, "'[W]ell, I'll talk to you, but I don't want to talk here;'" that they went to the church next door; that, when Billingsley and Sims came over, the appellant told him that he knew who had killed the victim and that he knew him by a nickname; that the appellant was saying names like Rock, Roderick, Rod, or something like that; that Billingsley said "Rodriguez" and the appellant agreed; that, when he asked the appellant who Rodriguez was, the appellant said, "'Nock's brother;'" that the appellant said the other person was just a "'dude'" riding in a vehicle; that the appellant told him he would talk to him, but he wanted him to get him away from there; that he and Sims took the appellant to city hall in an undercover vehicle; that they went to a conference room in the city hall; and that Lieutenant Richard Carter subsequently joined them. (R. 301, 302, 303.)

Forest Huguley testified that he lived on one corner and that the victim's house was on the other corner; that, on August 4, 1999, he was standing on a corner near the Mini Market; that he saw the appellant come from around "Nock's" house; that the appellant asked him if he wanted to buy a gun; that he told the appellant that he did not want to buy anything that was stolen; that the appellant told him that the gun was not stolen and that he just wanted to pawn it or sell it; that the appellant told him he did not have the gun, that "Nock" had the gun, and that he would get the gun; that the appellant left and returned with Heard; that Heard had a black, pistol-grip shotgun beside his leg; that he told them he did not want to buy it; that the appellant and Heard left; that, a day or two later, the appellant, Rodriguez, and another man arrived at Bell's store in a blue or gray Mazda; that the other man was driving, the appellant was in the front seat, and Heard was in the backseat; that he saw the shotgun the appellant and Heard had tried to sell him on the seat in

8

the vehicle; and that Heard had the shotgun.

Lieutenant Richard Carter of the Lanett Police Department testified that, on Sunday, August 8, 1999, he received a call regarding the victim's death; that, between 12:30 and 1:00 p.m., he arrived at the victim's house; that, at some point, he saw the appellant at the scene; and that, subsequently, he, Chief Brown, and Sims spoke to the appellant in the council chambers at city hall. Carter identified photographs of tire tracks from an area in front of the Econo Lodge in Lanett and said that it looked like a vehicle had backed off into a ditch and left marks.

In his initial statement to law enforcement officers, the appellant said that, before dark on August 7, 1999, he saw a man in a small, blue four-door vehicle; that he had seen the man before, but he did not know the man's name; that he stopped the man and asked him if he knew somebody who would want to buy a weedeater; that the man said he might come back and buy one after he had sold some tools; that, later that evening, he was walking in the old projects by Darden Line; that a man named "Rodriguez," who was "Nock's" brother, was walking behind him; that he heard Rodriguez run up behind him; that Rodriguez had a gun in his pants and was holding it by its pistol grip; that he asked Rodriguez what was happening; that Rodriguez said he was looking for someone and that he wanted to "hit a lick," which meant rob somebody; that the appellant told Rodriguez he did not know the person he was looking for and kept walking; that Rodriguez kept walking behind him; that he turned around and started walking in the other direction; that Rodriguez followed him; that he walked to his mother's house in the new projects, but he did not go inside; that Rodriguez asked him where he was going, and he told him he was going back across the field; that Rodriguez followed him when he went across the field toward Darden Line; that he subsequently stopped and spoke to "Moochy;" that Rodriguez put his gun down beside someone's fence; that he then walked off down the street; that the man in the blue vehicle pulled up and asked him about the weedeaters, and he told him he had two left; that the man in the blue vehicle told him to get in; that he got into the vehicle; that they drove around and went to the street where Rodriguez was; that Rodriguez "hollered to the car;" that the man stopped the vehicle; that Rodriguez picked up the gun and got into the

9

backseat behind him; that Rodriguez asked the driver if he
wanted to go with him to "'hit a lick,'" and the man said,
"'[Y]eah, let's talk about it;'" that they asked the appellant
if he "'was down'" with "'making a lick,'" and that he said he
was not "'down with that;'" that they went to the Shawmut
area; that a man called "Love Duck" pulled up beside them, and
he spoke to him; that the driver drove away and said that they
could have gotten him or something to that effect; that the
driver subsequently made a u-turn because he saw a police
vehicle; that they subsequently stopped, and Eddie Frank
Roberts pulled up behind them and stopped; that the driver got
out of the vehicle, walked back toward Roberts, and said
something to him; that the appellant got out of the vehicle
and walked back toward Roberts; that Roberts asked him where
was the "dope," and he told him that they did not have any;
that he believed the driver had planned to rob Roberts, even
though they had not discussed it; that they got back into the
vehicle; that the driver and Rodriguez were mad at him because
he had stopped them from robbing Roberts; that they said that
he was scared and that they might as well take him back to
Lanett because he was not "down with anything;" that he told
them to just drop him off; that Rodriguez said he wanted to go
through a white neighborhood and rob somebody; that they drove
to the area where the victim was killed; that, at some point,
Rodriguez told the driver to let him out, and the driver did;
that they drove off; that he told the driver to take him back
to Darden Line and drop him off; that the driver dropped him
off at a side street near North Eleventh Street and drove
away; that he heard a gunshot between two and three minutes
after Rodriguez had gotten out of the vehicle; that he walked
to Bell's store, where he saw "Booboo;" that he told "Booboo"
that Rodriguez had wanted to rob somebody; that he then went
in front of Bell's store; that he saw Rodriguez running and
holding the gun in his hand; that he asked Rodriguez what had
happened; that Rodriguez told him that some old white lady had
driven up in a vehicle, that he had tried to catch her, that
she had gone into the house, and that he had shot through the
door; that he subsequently saw Rodriguez again on the street
where the man in the vehicle had originally picked him up;
that Rodriguez did not have a gun; that Rodriguez told him
that he had not shot anybody; that the man in the blue vehicle
pulled up, Rodriguez got into the vehicle with him, and they
drove away; that the vehicle came back a few minutes later,
and Rodriguez was not in the vehicle; that he saw Rodriguez

10

again later that night; that he was talking to "Booboo;" and that he heard them planning a robbery for Monday.  (R. 370, 380, 381, 382, 383.)

Stan Ross testified that the appellant made two statements to him during the early morning hours of August 9, 1999.  In one of those statements, the appellant said that he and the other men were in Plant City; that those men were trying to talk him into committing a robbery; that he kept telling them he was not going to do something like that; that the driver turned around, backed up quickly, and backed into a ditch; that he and Rodriguez got out of the vehicle, lifted the back of the vehicle out of the ditch, and then got back into the vehicle; and that they all drove to Lanett.

Darcell Brown testified that, between 6:00 p.m. and 7:00 p.m. on August 7, 1999, he was driving a blue Nissan Stanza in the Lanett area; that he first saw the appellant walking on Darden Line; that he stopped and waved the appellant down; that the appellant told him he had three weedeaters he was trying to sell and that they were not stolen; that he told the appellant he would come back and get one from him after he had sold some tools; that, subsequently, the appellant came from a side road and stopped him; that the appellant asked if he could get into his vehicle, and he said he could; that the appellant told him he had a friend who wanted to "do a lick on a drug dealer," that they would give him something out of the deal, and that they needed a ride; that he said, "[O]kay;" that the appellant told him to circle the block; that, after he made a complete circle, the appellant directed him to a house where a man was; that he parked his vehicle; that Heard walked up from behind the vehicle, opened the door, got into the backseat, and said, "[L]et's go;" that Heard was not wearing a shirt, had a black handkerchief around his neck, and was carrying a weapon; that they drove off; that Heard and the appellant kept asking him what drug dealer they were going to rob; that he told them he was not from that area and that he did not know any; that the appellant kept asking him questions about where he was from, what type of vehicle they were in, and to whom the vehicle belonged; that he became nervous and told Heard and the appellant, that, if they planned to kill him, to go ahead and kill him; that they told him they were not going to do anything to him; that they drove to the West Shawmut area; that he subsequently saw a man he knew who sold

11

drugs; that he pointed the man out, but Heard said that he knew the man and that they could not rob him; that the appellant subsequently told him to pull over because he saw a man he knew; that the appellant and the man talked; that they subsequently drove away; that he saw a police vehicle with its lights on and made a u-turn; that he then pulled over, parked his vehicle, turned off the engine and headlights, and sat there; that Heard and the appellant got out of the vehicle; that Heard still had the weapon in his hand; that, about a minute or so later, another vehicle parked behind them; that the appellant spoke to someone in the other vehicle; that Heard and the appellant then got back into his vehicle; that the appellant said, "'[L]et's got to the Valley. I know someone we can do over there;'" that he told them he did not have enough gas to go to the Valley; that the appellant and Rodriguez directed him to a dark area, told him to stop the vehicle, and to back it up; that he hit the gas and went into a ditch; that Heard and the appellant got out of the vehicle, lifted the vehicle, and put it back on the ground; that the appellant and Heard got back into the vehicle; that the appellant gave him directions as he drove; that, a short time later, the appellant saw the victim and said, "'I know somebody we can rob,'" that she worked at the Spectrum, that she had just gotten off of work, and that he knew she had money; that the appellant told him to follow a brown vehicle; that they followed the vehicle until it parked in a driveway; that he kept going; that the appellant and Heard told him to stop; that, when he stopped, Heard got out of the vehicle; that he asked the appellant if he was getting out, but the appellant said the woman knew him; that he hit the gas, and the appellant asked him what he was doing; that he told the appellant he was not going to have anything to do with it; that he subsequently heard a shot go off; that the appellant said, "'[M]an, don't tell me he done shot her;'" that the appellant told him he needed to go back and find out what Heard had done; that he subsequently dropped the appellant off on Darden Line; that the appellant told him he needed to go back and get Heard; that he told the appellant he did not have anything to do with what Heard had done; that the appellant told him he would be responsible because Heard had gotten out of his vehicle; that, after he had dropped off the appellant, he went back toward the projects; that he saw the appellant walking on Darden Line; that he subsequently saw the appellant and Heard together; that he pulled over and told Heard they

12

needed to talk; that the appellant tried to get back into his vehicle, but he locked the door and told the appellant he could not get in; that Heard had the weapon in his hand; that Heard got into the vehicle; that he asked Heard what he had done; that Heard said he had just shot through a window; that he told Heard he needed to get rid of the gun; that he subsequently dropped Heard off around the corner; and that he subsequently left the area. (R. 427, 428, 432, 437, 439.)

The testimony of other witnesses, as well as evidence collected at the murder scene, confirmed details of the appellant's statement and Darcell Brown's testimony. Therefore, the State presented sufficient evidence to corroborate Darcell Brown's testimony, and the appellant's argument is without merit. Accordingly, we affirm the trial court's judgment.

**AFFIRMED.**

McMillan, P.J., and Cobb, Shaw, and Wise, JJ., concur.

IN THE SUPREME COURT OF ALABAMA
November 7, 2003

1021765
Ex parte Tommy Lee Wilson, alias.   PETITION FOR WRIT OF
CERTIORARI TO THE COURT OF CRIMINAL APPEALS   (In re: Tommy
Lee Wilson, alias, v. State of Alabama)    (Chambers Circuit
Court: CC00-74; Criminal Appeals : CR-02-0852).

CERTIFICATE OF JUDGMENT
Writ Denied

The above cause having been duly submitted, IT IS
CONSIDERED AND ORDERED that the petition for writ of
certiorari is denied for noncompliance with Rule 39, Alabama
Rules of Appellate Procedure.

NO OPINION.

JOHNSTONE, J. - Houston, Lyons, Harwood, and Woodall,
JJ., concur.

I Robert G. Esdale, Sr., as Clerk of the Supreme Court
of Alabama, do hereby certify that the foregoing is
a full, true and correct copy of the instrument(s)
herewith set out as same appears(s) of record in said
Court.
Witness my hand this 7th day of November, 20 03

Clerk, Supreme Court of Alabama

EXHIBIT
A-2

Court of Criminal Appeals No. _CR 04-1746_

# APPEAL TO ALABAMA COURT OF CRIMINAL APPEALS
### FROM
## CIRCUIT COURT OF CHAMBERS COUNTY, ALABAMA

Circuit Court Case Number: CC 2000-74
Circuit Judge: Honorable Ray D. Martin — *Howard F. Bryan*

Type of Conviction / Order Appealed From: _RULE 32 PETITION_
Sentence Imposed: _____

Defendant Indigent: _x_ YES  __NO

**TOMMY LEE WILSON** _____
NAME OF APPELLANT

**PRO-SE** _____
APPELLANT'S ATTORNEY                              (TELEPHONE NO.)

**AIS 225500 GIC 129 1000 SAINT CLAIR ROAD**
ADDRESS
**SPRINGVILLE      ALABAMA      35146-5582**
CITY              STATE              ZIP CODE

**v.**

**STATE OF ALABAMA** _____
NAME OF APPELLEE

(State represented by Attorney General)
NOTE: If municipal appeal, indicate above, and enter
Name and address of municipal attorney below.

_____

(For Court of Criminal Appeals use only)

EXHIBIT
B
PENGAD 800-631-6989

# ALABAMA COURT OF CRIMINAL APPEALS
## APPEAL FROM CHAMBERS COUNTY
### TOMMY LEE WILSON, RULE 32 PETITION

## INDEX

| | PAGES |
|---|---|
| PETITION FOR RELIEF FROM CONVICTION OR SENTENCE AND ATTACHMENTS | 001 |
| SUPPLEMENTAL GROUNDS OF PETITION | 050 |
| ORDER, DENYING RULE 32 PETITION | 060 |
| NOTICE OF APPEAL TO THE COURT OF CRIMINAL APPEALS | 061 |
| CRIMINAL APPEALS DOCKETING STATEMENT | 063 |
| REPORTER'S TRANSCRIPT ORDER FORM | 064 |
| TRIAL CLERK'S NOTICE OF APPEAL | 065 |
| CERTIFICATE OF COMPLETION AND TRANSMITTAL OF RECORD ON APPEAL | 066 |

# PETITION FOR RELIEF FROM CONVICTION OR SENTENCE

### (Pursuant to Rule 32, Alabama Rules of Criminal Procedure)

*CC 2000 74*

FILED IN OFFICE THIS

JAN 2 6 2004

CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA

**Case Number**

| ID | YR | NUMBER |
|----|----|--------|

IN THE _Circuit_ _____ COURT OF _Chambers_ , ALABAMA

_Tommy Lee Wilson_ _____ vs. _State of Alabama_
Petitioner (Full Name)          Respondent

[Indicate either the "State" or, if filed in municipal court, the name of the "Municipality"]

Prison Number _225500_ _____ Place of Confinement _St. Clair_

County of conviction _Chambers_

**NOTICE:** BEFORE COMPLETING THIS FORM, READ CAREFULLY THE ACCOMPANYING INSTRUCTIONS.

1. Name and location (city and county) of court which entered the judgment of conviction or sentence under attack _Lafayette, Chambers_

2. Date of judgment of conviction _On or about Oct. 3, 2002_

3. Length of sentence _Life Without Parole_

4. Nature of offense involved (all counts) _Count one- Capital Murder, Count Two- Capital Murder_

5. What was your plea? (Check one)
   (a) Guilty _____
   (b) Not guilty _✓_
   (c) Not guilty by reason of mental disease or defect _____
   (d) Not guilty and not guilty by reason of mental disease or defect _____

1

6. Kind of trial: (Check one)

   (a)  Jury  ✓

   (b)  Judge only _____

7. Did you testify at the trial?

   Yes _____

   No  ✓

8. Did you appeal from the judgment of conviction?

   Yes  ✓

   No _____

9. If you did appeal, answer the following:

   (a)  As to the state court to which you first appealed, give the following information:

      (1)  Name of court  Alabama Criminal Court of Appeal

      (2)  Result  Application for rehearing overruled

      (3)  Date of result  July 11, 2003

   (b)  If you appealed to any other court, then as to the second court to which you appealed, give the following information:

      (1)  Name of court  Supreme Court of Alabama

      (2)  Result  denied Writ of Certiorari

      (3)  Date of result  I received a letter from My Attorney Dated Dec. 5, 2003 Notify Me

   (c)  If you appealed to any other court, then as to the third court to which you appealed, give the following information:

      (1)  Name of court _____

      (2)  Result _____

      (3)  Date of result _____

2

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?

Yes _____          No __✓___

11. If your answer to Question 10 was "yes", then give the following information in regard to the first such petition, application, or motion you filed:

(a)  (1)  Name of court _____

(2)  Nature of proceeding _____

(3)  Grounds raised _____

_____

_____

_____

_____

(attach additional sheets if necessary) _____

(4)  Did you receive an evidentiary hearing on your petition, application, or motion?

Yes _____          No _____

(5)  Result _____

(6)  Date of result _____

(b)  As to any second petition, application, or motion, give the same information:

(1)  Name of court _____

(2)  Nature of proceeding _____

(3)  Grounds raised _____

_____

_____

_____

(attach additional sheets if necessary) _____

(4)  Did you receive an evidentiary hearing on your petition, application, or motion?

Yes _____          No _____

(5)  Result _____

(6)  Date of result _____

(c)  As to any third petition, application, or motion, give the same information (attach additional sheets giving the same information for any subsequent petitions, applications, or motions):

(1)  Name of court _____

3

(2)  Nature of proceeding _____

(3)  Grounds raised _____

_____

_____

_____

_____

(attach additional sheets if necessary) _____

(4)  Did you receive an evidentiary hearing on your petition, application, or motion?

Yes _____                   No _____

(5)  Result _____

(6)  Date of result _____

(d)  Did you appeal to any appellate court the result of the action taken on any petition, application, or motion?

(1)  First petition, etc.          Yes _____                    No _____

(2)  Second petition, etc.      Yes _____              :       No _____

(2)  Third petition, etc.         Yes _____                    No _____

**ATTACH ADDITIONAL SHEETS GIVING THE SAME INFORMATION
FOR ANY SUBSEQUENT PETITIONS, APPLICATIONS, OR MOTIONS.**

(e)  If you did not appeal when you lost on any petition, application, or motion, explain briefly why you did not:

_____

_____

_____

12.  Specify every ground on which you claim that you are being held unlawfully, by placing a check mark on the appropriate line(s) below and providing the required information. Include <u>all</u> facts. If necessary, you may attach pages stating additional grounds and the facts supporting them.

# GROUNDS OF PETITION

Listed below are the possible grounds for relief under Rule 32. Check the ground(s) that apply in your case, and follow the instruction under the ground(s):

_✓___    A.    <u>The Constitution of the United States or of the State of Alabama requires a new trial, a new sentence proceeding, or other relief.</u>

For your information, the following is a list of the most frequently raised claims of constitutional violation:

4

(1) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

✓(2) Conviction obtained by use of coerced confession.

✓(3) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

✓(4) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

✓(5) Conviction obtained by a violation of the privilege against self-incrimination.

(6) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

✓(7) Conviction obtained by a violation of the protection against double jeopardy.

(8) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

✓(9) Denial of effective assistance of counsel.

**This list is not a complete listing of all possible constitutional violations.**

If you checked this ground of relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each constitutional violation that you claim, whether or not it is one of the nine listed above, and include under it each and every fact you feel supports this claim. Be specific and give details.

_____ B. **The court was without jurisdiction to render the judgment or to impose the sentence.**

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

_____ C. **The sentence imposed exceeds the maximum authorized by law, or is otherwise not authorized by law.**

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

_____ D. **Petitioner is being held in custody after his sentence has expired.**

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

✓ E. **Newly discovered material facts exist which require that the conviction or sentence be vacated by the court, because:**

**The facts relied upon were not known by petitioner or petitioner's counsel at the time of trial or sentencing or in time to file a post-trial motion pursuant to rule 24, or in time to be included in any previous collateral proceeding, and could not have been discovered by any of those times through the exercise of reasonable ence; and**

**The facts are not merely cumulative to other facts that were known; and**

5

The facts do not merely amount to impeachment evidence; and

If the facts had been known at the time of trial or sentencing, the result would probably have been different; and

The facts establish that petitioner is innocent of the crime for which he was convicted or should not have received the sentence that he did.

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

_____ F.  The petitioner failed to appeal within the prescribed time and that failure was without fault on petitioner's part.

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

13.  IMPORTANT NOTICE REGARDING ADDITIONAL PETITIONS RULE 32.2(b) LIMITS YOU TO ONLY ONE PETITION IN MOST CIRCUMSTANCES. IT PROVIDES:

"Successive Petitions.  The court shall not grant relief on a second or successive petition on the same or similar grounds on behalf of the same petitioner. A second or successive petition on different grounds shall be denied unless the petitioner shows both that good cause exist why the new ground or grounds were not known or could not have been ascertained through reasonable diligence when the first petition was heard, and that failure to entertain the petition will result in a miscarriage of justice."

A.  Other than an appeal to the Alabama Court of Criminal Appeals or the Alabama Supreme Court, have you filed in state court any petition attacking this conviction or sentence?

Yes _____          No __✓__

B.  If you checked "Yes," give the following information as to earlier petition attacking this conviction or sentence:

(a)  Name of court _____

(b)  Result _____

(c)  Date of result _____
     (attach additional sheets if necessary)

C.  If you checked the "Yes" line in 13A, above, and this petition contains a different ground or grounds of relief from an earlier petition or petitions you filed, attach a separate sheet or sheets labeled: "EXPLANATION FOR NEW GROUND(S) OF RELIEF."

   On the separate sheet(s) explain why "good cause exists why the new ground or grounds were not known or could not have been ascertained through reasonable diligence when the first petition was heard, and [why the] failure to entertain [this] petition will result in a miscarriage of justice."

Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?

Yes _____          No __✓__

15. Give the name and address, if known, of each attorney who represented you at the following stages of the case that resulted in the judgment under attack:

    (a) At preliminary hearing *John Gunn*
        *P.O. Drawer 999 Roanoke AL. 36274*

    (b) At arraignment and plea *John Gunn*
        *P.O. Drawer 999 Roanoke AL. 36274*

    (c) At trial *Don Hamlin*
        *P.O. Box 657, Ashland AL. 36251*

    (d) At sentencing *Don Hamlin*
        *P.O. Box 657, Ashland AL. 36251*

    (e) On appeal *Gregory M. Varner*
        *10 County Road 31, P.O. Box 338 Ashland AL. 36251*

    (f) In any post-conviction proceeding _____

    _____

    _____

    (g) On appeal from adverse ruling in a post-conviction proceeding _____

    _____

    _____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?

    Yes _✓_                    No _____

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

    Yes _____                 No _✓_

    (a) If so, give name and location of court which imposed sentence to be served in the future: _____

    _____

    (b) And give date and length of sentence to be served in the future: _____

    _____

    (c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?

        Yes _____             No _____

18. What date is this petition being mailed?

    _____

    Wherefore, petitioner prays that the court grant petitioner relief to which he may be entitled in this proceeding.

7

# PETITIONER'S VERIFICATION UNDER OATH SUBJECT TO PENALTY FOR PERJURY

I swear (or affirm) under penalty of perjury that the foregoing is true and correct.

Executed on __1/21/04__
_____(Date)_____

_Tommy L. Wilson_
Signature of Petitioner

SWORN TO AND SUBSCRIBED before me this the __21__ day of __January__ __2004__

_Charles M. Golden_
Notary Public

## OR *

## ATTORNEY'S VERIFICATION UNDER OATH SUBJECT TO PENALTY FOR PERJURY

I Swear (or affirm) under penalty of perjury that, upon information and belief, the foregoing is true

and correct. Executed on _____.
_____(Date)_____

_____
Signature of Petitioner's Attorney

SWORN TO AND SUBSCRIBED before me this the _____ day of _____, _____

_____
Notary Public

Name and address of attorney representing petitioner
in this proceeding (if any)

_____

_____

_____

_____

_____

* If petitioner is represented by counsel, Rule 32.6(a) permits either petitioner or counsel to verify the petition.

Case Number

| ID | YR | NUMBER |
|---|---|---|

(To be completed
by Court Clerk)

# IN FORMA PAUPERIS DECLARATION

[Insert appropriate court]

Tommy Lee Wilson
(Petitioner)

vs.

State of Alabama
(Respondent(s)

## DECLARATION IN SUPPORT OF REQUEST TO PROCEED
## IN FORMA PAUPERIS

I, Tommy Lee Wilson _____ , declare that I am the petitioner
in the above entitled case; that in support of my motion to proceed without being required to prepay
fees, costs, or give security therefor, I state that because of my poverty I am unable to pay the costs
of said proceeding or to give security therefor; that I believe I am entitled to relief.

1. Are you presently employed?     Yes ✓     No _____

    a. If the answer is "yes", state the amount of your salary or wages per month, and give the
    name and address of your employer.

    $36.00 or $40.00 A Month; Alabama Correctional
    Industries, 1400 Lloyd St. Montgomery AL. 36107

    b. If the answer is "no", state the date of last employment and the amount of the salary and
    wages per month which you received.

    _____

    _____

2. Have you received within the past twelve months any money from any of the following sources?

    a. Business, profession, or other form of self-employment?

    Yes _____     No ✓

    b. Rent payments, interest, or dividends?

    Yes _____     No ✓

    c. Pensions, annuities, or life insurance payments?

    Yes _____     No ✓

    d. Gifts or inheritances?

    Yes _____     No ✓

    e. Any other sources?

    Yes _____     No ✓

If the answer to any of the above is "yes", describe each source of money and state the amount received from each during the past twelve months.

_____

_____

_____

_____

3.  Do you own cash, or do you have money in a checking or savings account?

Yes _____        No ✓

(Include any funds in prison accounts.)

If the answer is "yes", state the total value of the items owned.

_____

_____

_____

4.  Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property (excluding ordinary household furnishings and clothing)?

Yes _____        No ✓

If the answer is "yes", describe the property and state its approximate value.

_____

_____

_____

5.  List the persons who are dependent upon you for support, state your relationship to those persons, and indicate how much you contribute toward their support.

_____

_____

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on _____
                            (Date)

                    _Tommy L. Wilson_
                    Signature of Petitioner

## CERTIFICATE

I hereby certify that the petitioner herein has the sum of $ _·21¢_ on account to his credit at the institution where he is confined. I further certify that petitioner likewise has the foregoing securities to his credit according to the records of said _St. Clair C.F._ institution:

_____

_____

_____

_1/20/04_
DATE

                    _Darlene Hannah Rux_

## CONCLUSION

/oneSelf Tommy Lee Wilson Was convicted of
..ital Murder (2 counts) base solely upon the psychatric
..ity of the D.A (District Attorneys) to persuade the jury
believe What they (D.A.) think happened.
..ere Was no evidence produced by D.A./State to connect Me
..eSelf Tommy Lee Wilson to the crime, there Was no
..A evidence, No Eyewitnesses, . Witness Dexter Gibson
..stified that he has been threaten and coerced by
..cal officials Pages 233-235,.
..tness Darcell Brown letter (Exhibit #3) to oneself
..mmy L. Wilson, Confirmation that I/oneself (Wilson)
..iew Nothing about the crime, and that he (Brown) Was
..der enormous pressure by his Attorneys on behalf
..: the D.A. (District Attorneys) to Lie on behalf/in Support
...ne State/D.A.

Tommy Lee Wilson Am INNOCENT, Jommy Lee Wilson
                                                #225500

tate of ALABAMA
;

MMY LEE WILSON          CS# CC-00-74

11

iminal Law 1171.1(2.1)

ssess the prejudicial effect of a prosecutor's
marks, an appellate Court must Consider the remarks
v context and assess their probable impact on the
ury.

prosecutor's remarks Compel a reversal only if the
marks So infected the trial With unfairness as to
ake the resulting Conviction a denial of due process.
S.C.A. Const. Amend. 14.

# Black's Law Dictionary

Sufficiency of evidence to Support verdict. This phrase in a motion for New trial, or for judgment Notwithstanding the Verdict, means that there is Some evidence, but not enough in light of the Evidence to the Contrary to Support a Verdict. Arnold v. Haskins, 347 Mo. 320, 147 S.W. 2d 469, 472. It means that there is no evidence which ought reasonably Satisfy jury that fact to be proved is Established.

/oneself Tommy Lee Wilson Along With Darcell Brown
d Rodericus Heard was charged with Capital Murder and
r-use I (Wilson) Told the truth, Brown and Heard admitted
being guilty, and because of their Anger towards Me, Brown
conspired With the D.A. (District Attorneys) to fabricate a Case
against Me. (Brown testified/Lied for the state at My trial),
sed on the Court records the D.A.'s Knows/Knew that
own Was/is a Compulsive liar, yet, My due process was
glected, this Conspiracy perpetrated against Me
ould Not have been allowed to manifest (Brown Should
ve been Impeached/Not Allowed to testify).

am Innocent, and I pray to God that this court
Knowledge these facts and Correct this injustice
nded down to Me, once again, Heard admits he Shot
s. Weaver, Brown admits he let heard out of his Car in
  icinity of Ms. Weaver's home, Enroute to taking
/oneself Tommy Lee Wilson home

acts/Grounds in Support of Reversal #CS-CG00-74

. Pages 112, Waiver, Support defendant Tommy Lee Wilson was
Not Mirandized, See Exhibit #2, Pg. 112

es 1 (Also Marked 120), 201, 202, Support defendant
Tommy Lee Wilson was not protected from Double jeopardy,
their being only one Murder, yet defendant Wilson was charged
with two Counts of Capital Murder.

Note: Michael L. Hitchcock (Forensic, State of Alabama) testified,
    It was not determined Whether Shooter or victim was
    inside of house or outside of house, See Pages 340, 341,
    Hitchcock's testimony, therefore violation of Section
    13A-5-40(a)(16) of the Code of Alabama is without Merit,
    thus rendering the Court was bias in Allowing this
    Charge to the jury.

Pages 233, 234, 235, Dexter Gibson testimony, Admitting
that he was threaten and Coerced, on Page 233 Line 14-25,
Quote: Mr. Gibson's testimony is/was received in violation of
    stitutional Rights (State and Federal).

ages 422-424 Darcell Brown admitting he has Lied several
mes to officials concerning this Case in Which defendant
ilson is Charge (Note: Brown's testimony should not have been Allowed,
rown admitted he has Lied Every time he was asked A question.
ges 452-458 Brown's letter to Wilson (Exhibit #3) Admitting and
on firming, Wilson (the defendant) Knew nothing about the Crime,
So in the letter (Exhibit #3) Brown admits that he is/have been
reaten/Coerced to Lie (by D.A. thru his Attorneys)
t the trial (Tommy Lee Wilson vs. State of Alabama, CS #CC-00-74)
rown's unreliableness to be truthful is once again revealed,
rown did not read Exhibit #3 (the letter he wrote) Exactly as he
rote it, Compare Pages 452-458 to Exhibit #3.
effective Counsel, Page 14 Line 3 and Line 4 and Also Line 11.

15

acts/Grounds of Petition-A.(2)(3)(4)(5)

Page 112, Waiver, Support defendant Tommy Lee Wilson was not Mirandized, See Exhibit #2, Pg.112

cts/Suppl. Grounds of Petition-A.(2)(3)(4)(5)

My Rights governed under the Constitution of these United States Was violated When information retain in Me/oneself Tommy Lee Wilson Was obtained by/through Methods/Acts of Coercion/Trickery.

My Constitutional Rights Was violated When illegally Seized Confession/Statements Was Allowed to be used against Me in Court/at My trial.

1.) in Support of #1. and #2.- Constitutional Law $840.5 due process-involuntary Confession.

upon being deprived of My freedom/Arrested, I WAS NOT MIRANDIZED-See Exhibit #2

1.) in Support of #3., See Miranda Rule

My Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments rights governed by/under the United States Constitution have been violated, And I/Tommy Lee Wilson #225500 Am falsely imprisoned because of these violations of My Rights.

17

Miranda V. Arizona
   384 US 436, 16 L ed 2d 694, 86 S Ct 1602

Constitutional Law §840.5-due process-involuntary Confession

A defendant's Constitutional rights are violated if his
conviction, in a federal or State Court, is based, in whole or in
part, on an involuntary Confession, regardless of its truth or
falsity; this is so even if there is ample evidence aside
from the Confession to Support the Conviction.

Evidence §685-Confession-admissibility

2. An oral Confession made by defendant to the police,
and the transcript of an inculpatory statement made by
him to an Assistant district attorney, are inadmissible at
his trial in a State Court, and his conviction of robbery
must be reversed, where he was not warned of any of his
rights to counsel and to be silent before the questioning, and no
other steps were taken to protect these rights.

Appeal and Error §1123-raising question below
the failure of defense Counsel to object to the introduction
at trial of a Confession obtained during police interrogation
does not preclude Consideration of the issue by the
Supreme Court of the United States, and does not
constitute a waiver of the claim, where the trial was held
prior to a decision of the Supreme Court establishing the
pertinent rules for the first time.

# Black's Law Dictionary/Fifth Edition

## Miranda Rule

... r to any custodial interrogation (that is, questioning initiated
y law enforcement officers after a person is taken into
ustody or otherwise deprived of his freedom in any
ignificant way) the person must be warned: 1. that he has
right to remain silent; 2. that any statement he does
ake may be used as evidence against him; 3. that he has a
ight to the presence of an attorney; 4. that if he cannot
fford an attorney, one will be appointed for him prior to any
uestioning if he so desires.

nless and until these warnings or a waiver of these rights
 demonstrated at the trial, no evidence obtained in the
nterrogation may be used against the accused.
iranda v. Arizona, 384 U.S. 436, 444, 478, 479, 86 S. Ct. 1602, 1612,
30, 16 L. Ed 2d 694.

112

*WAIVER OF COUNSEL*

PLACE __Lanett  P.D.__

DATE __8/8/99__

TIME __2245__

Before we ask you any questions, you must understand your rights:

1.  You have the right to remain silent.

2.  Anything you say can and will be used against you in court.

3.  You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.

4.  If you cannot afford a lawyer, one will be appointed without cost to you before any questioning if you wish.

5.  If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time you wish.

X Refused

*WAIVER OF RIGHTS*

I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercision of any kind has been used against me.

Signed __Refused__

Date _____

Witness _____

Witness _____

STATE'S
EXHIBIT

acts/Suppl. Grounds of Petition-A. (7)

Pages 1. (Also Marked 120), 201, 202, Support defendant Timmy Lee Wilson was not protected from Double jeopardy, their being only one Murder, yet defendant Wilson was Charged with two Counts of Capital Murder.

Note; Michael L. HitchcocK (Forensic, State of Alabama), testified, It was not determined whether Shooter or Victim was inside of house or outSide of house, See Pages 340, 341, HitchcocK testimony, therefore Violation of Section 13A-5-40(a)(16) of the Code of Alabama iS without Merit,

## THE STATE OF ALABAMA, CHAMBERS COUNTY
### CIRCUIT COURT, SPRING TERM, 2000

1.      The Grand Jury of Said County charges that before the finding of this Indictment, Tommy Lee Wilson, alias, whose name is otherwise unknown to the Grand Jury, did intentionally cause the death of Betty Weaver by shooting her with a pistol, shotgun or rifle, a further description of which is otherwise unknown to the Grand Jury, and Tommy Lee Wilson, or another participant, caused said death during the time that Tommy Lee Wilson, or another participant, was in the course of committing a theft of lawful currency of the United States of America, the exact denominations of which are otherwise unknown to the Grand Jury, the property of Betty Weaver, by the use of force against the person of Betty Weaver, or against the person of another present, with the intent to overcome her physical resistance or physical power of resistance, or to compel acquiescence to the taking of or escaping with the property, while the said Tommy Lee Wilson, or another participant, was armed with a deadly weapon or a dangerous instrument, to-wit: a pistol, shotgun or rifle, a further description of which is otherwise unknown to the Grand Jury, in violation of Section 13A-5-40(a)(2) of the Code of Alabama, against the peace and dignity of the State of Alabama.

2.      The Grand Jury of Said County further charges that before the finding of this Indictment, Tommy Lee Wilson, alias, whose name is otherwise unknown to the Grand Jury, or another participant, did intentionally cause the death of Betty Weaver by or through the use of a deadly weapon by shooting her with a pistol, shotgun or rifle, a further description of which is otherwise unknown to the Grand Jury, while the said Tommy Lee Wilson or another participant, was outside a dwelling and the said Betty Weaver was inside a dwelling, in violation of Section 13A-5-40(a)(16) of the Code of Alabama, against the peace and dignity of the State of Alabama.

*Ren S. Clark*

District Attorney of the Fifth Judicial Circuit

C36

# THE STATE OF ALABAMA

Circuit Court, _____ COUNTY

_____ Term, 20 _____

**To the Sheriff of said County:**

I hereby certify that this is a true and complete copy of the Indictment presented to the Court by the Grand Jury of Said County against _____

charged with _____ together with all endorsements on said Indictment, and that the trial is set for _____ 20 _____

or his counsel.

Witness my hand, this _____ 20 _____

_____ Clerk

I hereby certify that I have received above stated copy of Indictment from the Circuit Court Clerk of said County and served same on _____

at _____ o'clock _____ M., _____ 20 _____

_____ Sheriff

_____ D.S.

---

No. CC 00-74

# THE STATE OF ALABAMA

CHAMBERS COUNTY

## CIRCUIT COURT

SPRING Term, 20 00

THE STATE
vs
TOMMY LEE WILSON, ALIAS

## INDICTMENT

CAPITAL MURDER (13A-5-40(A)(2)
CAPITAL MURDER (13A-5-40(A)(16)

No Prosecutor

WITNESSES:
RUBY LEE SMITH ISHMAEL WALKER
EMILY HENSON DEXTER GIBSON
TYWANNA BLAKES TYLER KNOWLES
LUCRETIA WRIGHT RICHARD CARTER

---

Grand Jury No. 136, 137

A TRUE BILL. —

_____ Foreman Grand

Filed in open Court on the FEB 18 2000

in the presence of the Grand Jury.

_____

Presented to the presiding Judge in open Court the Foreman of the Grand Jury, in the presence of

Grand Jurors, and filed by order of the Court this 15 othe

day of FEB 18 2000 20 _____

_____ Clerk

Bail fixed at $ No BOND (F

this _____ day of FEB 18 2000 2

_____ Judge Presiding

201

## COUNT TWO

We, the jury, find the defendant guilty of Capital Murder.

_Lana Wiggins_
_____
Foreperson

We, the jury, find the defendant guilty of Murder.

_____
Foreperson

We, the jury, find the defendant not guilty.

_____
Foreperson

202

## COUNT ONE

We, the jury, find the defendant guilty of Capital Murder.

_Lana Wiggins_
Foreperson

We, the jury, find the defendant guilty of Murder.

_____
Foreperson

We, the jury, find the defendant guilty of Manslaughter.

_____
Foreperson

We, the jury, find the defendant not guilty.

_____
Foreperson

Citation/Title
766 So.2d 143, Ex parte Rice, (Ala. 1999)

**\*143**   766 So.2d 143

Supreme Court of Alabama.

**Ex parte Ray Anthony RICE, Jr.**
**(In re Ray Anthony Rice, Jr.**
**v.**
**State of Alabama).**

**1980846.**
Nov. 5, 1999.

Rehearing Denied Jan. 7, 2000.

Defendant was convicted in the Jefferson Circuit Court, No. CC-97-2672, J. Richmond Pearson, J., of felony murder committed during a kidnapping and felony murder committed during a robbery. Defendant appealed and the Court of Criminal Appeals, No. CR-97-1809, affirmed by unpublished memorandum. On grant of defendant's petition for writ of certiorari, the Supreme Court held that convicting defendant, who committed only one killing, of both felony murders violated double jeopardy.

Reversed and remanded.

Johnstone, J., filed an opinion concurring specially.

On remand to, Ala.Cr.App., 766 So.2d 154.

West Headnotes

Double Jeopardy ☞134

135H ----
    135HV Offenses, Elements, and Issues Foreclosed
        135HV(A) In General
            135Hk132 Identity of Offenses;  Same Offense
                135Hk134 Several Offenses in One Act;  Separate Statutory Offenses and Legislative Intent.

Double jeopardy protection for criminal defendants constrains only the judiciary to act in accordance with the expressed will of the legislature, but not prohibit the legislature from authorizing the imposition of multiple sentences for the commission of statutorily separate offences that must be shown as the same offense under the *Blockburger* test, provided the legislative intent to do so is clear and the prosecutions and convictions occur in a single trial.   U.S.C.A. Const. Amend. 5.

Copyright (c) West Group 2001 No claim to original U.S. Govt. works

5-8-52 Joinder of offenses in Same Count
When offenses are of the Same character and Subject to
the Same Punishment, the defendant May be charged in an
indictment With the Commission of either in the Same
Count in the alternative.
Code 1852, §575; Code 1867,§4125; Code 1876, §4798; Code 1886,§4385;
Code 1896, §4913; Code 1907, §7151; Code 1923, §4546; Code 1940, T.15,
§249.)

340

1   Q   So out beyond what's shown in -- out beyond where
2       the screen door fastened there was no pieces of
3       blue plastic?
4   A   I don't recall seeing any, no, sir.
5   Q   If they would have been there, y'all would have
6       gathered them?
7   A   That's correct.
8   Q   Do you have a -- withdraw that.  Did you find any
9       evidence that would indicate that Ms. Weaver was
10      not inside her residence when she was shot?
11  A   No, sir, did not find anything that would indicate
12      she was not inside the residence.
13  Q   Did you find any evidence that would indicate the
14      shooter was not in the residence when she was
15      shot?
16  A   Was not inside the residence?  Like I said, all we
17      found was the plastic on the inside in between the
18      back door and the screen door and some pellets on
19      the kitchen floor.
20  Q   So the shooter could have been inside and shot
21      her, could he not?
22  A   I guess that's possible.
23  Q   Thank you.  Did you find any evidentiary value to
24      either the screen door or the wood door?
25  A   See, the latent print lift was actually on the

28

341

outside of the wooden door. We did take the
screen door for possible fingerprints. That was
submitted to the fingerprint lab. As far as the
wooden door, we didn't see anything there.

Q    The print I believe we heard yesterday did not
match any of the people? You may not know that?

A    I'm not sure.

Q    You didn't make a determination that the hole in
the door was caused by the shotgun blast, did you?

A    No, sir.

Q    It was some other type injury to the door?

A    We just knew it was busted. I don't know what
caused that.

Q    Screen doors commonly get pushed through by people
just pushing on them?

A    Sure, that happens, yes.

        MR. HAMLIN:  Thank you very much.

        THE WITNESS:  Thank you.

        MR. GIBBS:  I have no further questions of
this witness.

        THE COURT:  May this witness be excused?

        MR. HAMLIN:  Yes, sir.

        THE COURT:  Thank you, sir. You may go.

        MR. CLARK:  Mr. Hamlin.

                (BENCH CONFERENCE OFF RECORD)

icts/Grounds of Petition-Suppl. E.

Pages 233, 234, 235, Dexter Gibson testimony
Admitting that he was threaten and Coerced,
Page 233 Line 14-25

233

Q    What is it?

A    Statement.

Q    Can you read it?

A    Yes, sir.

Q    Would you read it out loud to the jury?

A    Can't read it that well.  I can read it.

Q    I don't mean to embarrass you.  You're not able to read this to the jury, are you?

A    No, sir.

Q    You weren't able to read that statement that reference was made to a few minutes ago either, were you?

A    No, sir.

Q    Now, you remember me interviewing you on July 21st, 2000?

A    Yes, sir.

Q    You remember telling me at that time that you were coerced into making that statement?

A    Yes, sir.

Q    That you were threatened you might be arrested if you didn't?

A    Yes, sir.

Q    You do remember that?

A    Yes, sir.

Q    Do you remember telling me that you had two prior

234

1          felony convictions?

2     A    Yes, sir.

3     Q    And they were for what, please?

4     A    Burglary.

5     Q    Here in Alabama one of them and one of them in

6          Georgia?

7     A    Yes, sir.

8     Q    Were you on some kind of parole or probation back

9          then?

10    A    No, sir.

11    Q    What kind of threats did the police make to you if

12         you didn't make a statement?

13    A    Lock me up.

14    Q    Said they would lock you up.  Did you tell them

15         what was in the statement, or did they tell you

16         what should be in the statement?

17    A    I can't remember.

18    Q    You really don't remember exactly what was said,

19         do you?

20    A    No, sir.

21    Q    Your first testimony here before Mr. Gibbs showed

22         you that document and read part of it to you was

23         that Mr. Wilson said something was going down?

24    A    Yes, sir.

25    Q    Did he give you any more details than that about

1           it?

2    A      A little bit.

3    Q      What did he say?

4    A      Something was going down, somebody getting robbed.

5    Q      But he didn't say it was a woman or a man, did he?

6    A      No, sir, I can't remember, sir.

7    Q      You're just really trying to get along with all of

8           us today, aren't you?  But you really don't

9           remember other than he said somebody was getting

10          robbed, is that true?

11   A      Yes, sir.

12               MR. HAMLIN:  We'd offer Defendant's Number 1.

13               THE COURT:  It's admitted.

14                    (Defendant's Exhibit 1 admitted.)

15               MR. HAMLIN:  That's all.  Thank you.

16               THE COURT:  Anything further of this witness?

17               MR. GIBBS:  Nothing further.

18               THE COURT:  You may step down.  Thank you.

19               MR. CLARK:  State calls Tommy Sims.

20                    THOMAS SIMS

21          called as a witness by the State, having been

22          first duly sworn, was examined and testified as

23          follows:

24                    DIRECT EXAMINATION

25   BY MR. CLARK:

Frances R. _____, CSR, RPI

icts/Grounds of Petition - Suppl. E.

Pages 422-424 Darcell Brown admitting he has Lied several times to officials Concerning this Case in Which Defendant Wilson is Charged.

Note; Brown's testimony should not have been Allowed, Brown admitted he has Lied EVERYTIME he was Asked A question.

422

10th, were you in that vehicle during the early morning hours of Sunday, August the 8th, 1999, around the time Ms. Weaver was killed?

A    Yes, sir.

Q    Now, after you were arrested out in Huguley that Tuesday morning, did the police take you somewhere?

A    Yes, they did.

Q    Do you know where it was they took you?

A    Police station.  I don't know which one it was, but I know I went to the police station in Lanett or Valley.

Q    A police station.  And they questioned you there, did they not, that Tuesday?

A    Yes, sir.

Q    And you gave a statement; is that correct?

A    An oral statement.

Q    I want to ask you to tell the members of the jury when you were first questioned by the police after they caught you out there in Huguley and took you to the police department and took you in for questioning, did you tell them the complete truth when they first started questioning you?

A    No, I didn't tell them the complete truth.  I held back some things from them.

Frances P. Looney, CSR, RPR

423

1    Q    Now, remember to keep your voice up.  Wait till

2         the truck goes by.  When you gave your initial

3         statement to the police on August the 10th, did

4         the police ask you if when you were in the car

5         with Rodriguez Heard if Rodriguez Heard was armed?

6         Did they ask you that?

7    A    Yes, sir.

8    Q    What did you tell them initially?

9    A    I told them, no, he wasn't.

10   Q    Was that true?

11   A    No, it wasn't true.

12   Q    During that initial statement to the police, did

13        the police ask you if you saw the gun while you

14        were in the car?  They ask you that?

15   A    Yes.

16   Q    What did you tell them?

17   A    I told them I didn't see any gun.

18   Q    Was that true?

19   A    No, it wasn't.

20   Q    Did the police ask you when they first questioned

21        you if you were deliberately following the woman

22        that was the victim in this case?  Did they ask

23        you that?

24   A    Yes.

25   Q    What did you tell them at first?

Frances P. Looney, CSR, RPR

36

424

A     I said no.

Q     Was that true?

A     No, it wasn't true.

Q     During the initial interview did the police ask you if the woman was a target for a robbery?

A     Yes, they did ask me that.

Q     What did you tell them initially?

A     No.  I told them no.

Q     Was that true?

A     No, it wasn't true, not on my behalf.  It wasn't true.

Q     Now, I want to go back to the weekend prior to your arrest and ask you if during the late night of Saturday, August the 7th or early morning hours of Sunday, August the 8th if you had the occasion to be in the Lanett area around Cherry Drive in the blue Nissan?

A     Yes, sir.

Q     Sometime during that time did you see the defendant in this case, Tommy Wilson?

A     Yes, sir.

Q     I want you to tell the members of the jury, Mr. Brown, to the best of your recollection where was Tommy Wilson when you first saw him that night?

A     He was walking in the projects.  Well, not in the

Frances R. [Io??]

mpeach of Witness - to call in question the veracity
a Witness, by means of evidence adduce for such
rpose, or the adducing of proof that a Witness is
...orthy of belief.

:Wethy V. Lee, 1 Ill. App. 3d 80, 272 N.E. 2d 663, 666. In general,
ough there are variations from State to State, a Witness
y be impeached with respect to prior inconsistent
atements, contradiction of facts, bias, or character.
d. R. Civil P. 32(a)(1) permits the use at trial of a
tness's prior deposition to discredit or impeach
stimony of the deponent as a Witness.

Rules of Court/ALabama

Rule 16. Discovery

Committee Comments

Courts recognize that defendant's right to a fair trial is violated when the State knowingly allows false evidence to be used against the defendant, Miller v. Pate, 386 U.S. 1, S. Ct. 785, 17 L. Ed. 2d 690 (1967); Napue v. Illinois, 360 U.S. 264, S. Ct. 1173, 3 L. Ed. 2d 1217 (1959).

...cts/Grounds in Support of Reversal #CS-CC-00-74
Pages 452-458 Brown's letter to Wilson (Exhibit #3)
...mitting and Confirming, Wilson (the defendant)
Knew nothing about the Crime, Also in the letter (Exhibit
#3) Brown admits that he is/have been threaten/Coerced
to Lie (by D.A. thru his Attorneys)

452

        (Defendant's Exhibit 3, letter, marked.)

Q    Take a look at what's been marked Defendant's Number 3. Did you write that letter?

A    Yes, I wrote this.

Q    In that letter did you not say that the State wanted you to make a plea even though you were innocent, a plea bargain agreement? Would you just read -- you wrote this it, should be legible to you. Can you just read the letter?

    MR. CLARK: Has it been admitted?

    THE COURT: I don't know that it's been offered.

    MR. HAMLIN: I'll offer it.

    MR. CLARK: We don't have any objection.

    THE COURT: Admitted. Go ahead.

      (Defendant's Exhibit 3, letter, admitted.)

A    This is 1/14/02.

Q    That the date that somebody else put on it. I don't believe that's the date you might have wrote it. But whatever you remember.

A    Okay. Why in God's name are we still here? Now before --

Q    Just read the letter. Then we can talk about it.

A    I was trying make good sense of what became of my

life.  But I keep coming up with nothing.  I'm

trying to figure D.A. motive in charging you and I

with capital murder when they already have the

gunman and weapon.  I can't make sense of it.

What more do they want?  For me or you to tell

this story.  How foolish.  Why would I do 5 to 15

years out of my life in prison for a crime?  I was

completely to tell in great hopes of not getting

life without.  I'd rather spend 5 to 10 years

fighting to obtain my freedom rather than sit in

prison 5 to 15 years for a crime, a senseless

crime, I did not commit.  And doing day for day

willfully makes no sense.  I have one thing in

common with you.  I was totally unaware of Mr.

Heard's true intent upon exiting my vehicle.  I

surely hope that God's grace and mercy will follow

us today, tomorrow, forever the same.  I have two

meat ball attorneys.  I have fired them both eight

months ago.  None of my phone calls were ever

accepted.  None of my letters were ever responded

to.  None of my wife's phone calls were never

returned and the same goes for my mother, uncle,

aunt, and my two brothers.  On their first visit

to see me there was talk of me taking a plea to

felony murder.  I said why should I when I was not

there, etc., etc. They play the D.A. saying if you lose you'll get life without, so take life. Also the D.A. is going to say all kinds of things to persuade the jury of their guilt. The brother it was crazy, I swear, as if they were the D.A. From the very start I knew I had no true defense lawyer. If I had one that would truthfully work for me I sure to walk away a free man.

A lot of things the judge is going to allow as evidence won't hold up in no Federal Court. You must remember that Chambers County crowd is about one of the dirtiest corrupted crowds ever seen. But the Feds hold no favoritism. It was strictly facts and if the evidence was mishandled and poorly conducted that it would be throwed out. That's a fact. Put me much in much needed information, his point of view, take it all the way. The evidence they got in my letter to Heard and Judge Holley and criminal background be tossed aside. Reading Heard's personal letter is a violation. They caught that, they searched his room for contraband and confiscated those letter. Instead of placing them in his property they was read and made copies of. My letter to Sandy was taken and made a copy of. The letter to Judge

Holley was sealed.  It was reopened and made a
copy of.  It was then turned over to Investigator
Mike Loser from Lafayette who made copies and sent
it off to the D.A. who in return sent a copy to my
lawyer in Lanett who in return gave it to my
lawyer from Montgomery.  Strong point why was
that person to items that pertained to my case
turned over to anyone from Lafayette.  The
Lafayette police department is supposed to handle
my case -- the Lanett Police Department supposed
to handle my case, not Lafayette.  Also why was my
personal letters exposed.  I'm on top of my
paperwork.  Because Chambers County won't be fair
the federal courts are sure to kick it out.
That's that.  I sent a letter to Judge Martin.
And both of my attorneys asked him to get me
another attorney, also asking to step down from my
case because I don't trust either one.  I'm still
going through some hard times.  I miss my kids who
are 10, 9, 8, and 6.  Situations uncalled for.  We
are separated from those we love for a crime
neither one knew took place.  Trust comes far and
few.  This crap about following someone is unheard
of.  And I'll go to my grave with it before I take
sides with the prosecutor for a lesser sentence.

1  The D.A. lawyer wants you -- I'll tell that story.

2  I refuse to do 10 years.  And God know how much

3  for a crime I knew nothing of.  If you cross me up

4  by lying and turning State's witness I do several

5  (inaudible) you openly admitted.  You and other

6  guys knew all the time robbery was at hand.

7  They're playing dirty.  I fired both of my

8  attorneys eight months ago.  In regards to the

9  D.A. wanting to cut a deal I told them to fuck

10  off.  I prepared a defense that will rock my

11  world.

12      I'm going to put Lieutenant Richard Carter on

13  the stand and eat him alive.  I promise.  Show

14  that the police department and the D.A. conspired

15  to fabricate bogus story.  Although Heard signed a

16  statement it too is bogus because he never read

17  it.  He just signed it.  Mr. Carter openly saying

18  that it was by the D.A.'s office.  The interview

19  that was being conducted clearly show bias and

20  injustice that have been inflicted upon us.  When

21  they get through with the lieutenant I'm going to

22  show that a no guilty verdict has been

23  established.  They have raped.  (Inaudible) for

24  lots of year for no reason.  I know for a fact you

25  lose here on account of us just being poor and

457.

black, we'll win for sure in federal court. They

can't produce fact. It might take 5 to 10 years

to get there. But you better believe that when it

gets there we're going to be totally free. I

foresee this. I feel it running through my blood.

One day we'll be free. You know what, I don't

think I be provided another lawyer. If I do I'll

let him ask the questions.

Look, stay in touch. If they didn't want us

to correspond they would have shipped us to

different locations until trial. I will stay in

touch. I done wrote to several people in regards

to my current situation. Here's the addresses.

And these are the addresses that I wrote.

Q    You wrote this before you entered into your plea

agreement with the State?

A    Yes, I did.

Q    Now, in that letter you were subtly threatening

Mr. Wilson that if he said anything against you

you'd drum up some witnesses that would get him in

more trouble, didn't you?

A    Yes, I did.

Q    You're here testifying as you did to hold up your

part of this plea bargain, right?

A    No. That's like I told you when you came down to

1    visit me, Tommy Lee is guilty.  And God knows that

2    man is guilty.  You know he's guilty as well as I

3    know he's guilty.

4  Q  You also told me that you hoped he burnt in hell

5    and rotted in prison, too, didn't you, because you

6    were in jail because of him giving information

7    against you.  Didn't you tell me that?

8  A  No.  What I did tell you was --

9  Q  No, what you told me is what I just said.  You

10   said you wouldn't be here if it wasn't for Tommy

11   Lee Wilson?

12  A  Right, because I had nothing to do with the crime

13   and Tommy Lee Wilson know that.

14  Q  You pled guilty.  You had something to do with the

15   crime, didn't you?

16  A  I had to plead guilty.  I had to, or I would have

17   got life without.  I had to.  There was no way

18   out.  I had to claim up to my responsibility.  And

19   that's what I did.  I put these guys in my car.

20   And I shouldn't have put them in my car.  Had it

21   not been for that man putting my name in that car,

22   then they'd just had to deal with him and

23   Rodriguez.  I had nothing to do with it.

24  Q  I have no further questions.

25  A  I hope he do burn in hell.  And that man is

icts/Grounds in Support of Reversal #CS-CG-00-74

At the trial (Tommy Lee Wilson VS. State of ALabama, CS-CC-00-74)

﹖ own's unreliableness to be truthful is once again revealed,

Brown did not read Exhibit #3 (the letter he wrote) Exactly As

He Wrote it, Compare Pages 452-458 to Exhibit #3.

CS# CC-00-74                           Dec. 19, 2003

r. Story, Sir, after reviewing transcripts from trial,
is a number CC-00-74.

, age #452 thru 458 is suppose to be an exact reading of Exhibit #3
ad into the record by Darcell Brown, the Author of Exhibit #3).

r. Story/Clerk what's on the transcript pages 452-458 does not
ad the same as Exhibit #3

Wit: Pg. 453 Line 6 of transcript, the Word this has been
    Substituted for their (Exhibit #3 uses their)

Wit: Pg. 454 Line 11-12 these Lines does not Align With Exhibit #3,
    the Word Crowd is not Mentioned no-Where in Exhibit #3, these
    Lines are totally out of Context With Exhibit #3

Wit: Pg. 454 Line 16-17 (And it does not read the Same as Exhibit #3, a
    Person's name have been left out), "the Person Last name
    is Boozer," a C/O at Chambers County Jail during the time
    the letter (Exhibit #3) Was Written by Darcell Brown

Wit: Pg. 456 Line 4-6 (these Lines in no Way is read like none of Exhibit #3)

. Story/Clerk, Sir, there's numerous things wrong in
ibit #3, Compare what's contained herein with Exhibit #3 and
r will see).

erefore, would you please Mail me/oneself Tommy Lee Wilson#225500
opy of Exhibit #3 it is needed in order that I may continue
seek my freedom from this false imprisonment that have
in imposed upon me, For My God Knows I'm INNOCENT

Case Went to trial, Oct. 2002            Thanks for your Co-operation
                                         Tommy Lee Wilson
                                         Ais #225500
                                         1000 St. Clair Rd.
                                         Springville, AL. 35146-5582
                                         G-2-B-219

cts/Suppl. Grounds of Petition-A.(9)
neffective Counsel, Page 14 Line 3 and Line 4 and Also Line 11

)˜enial of effective assistance of Counsel.

Attorney Mr. Don Hamlin was totally ineffective in presenting the facts of this case in which I/oneself mmy Lee Wilson was charged with two counts of ipital Murder,.

Hamlin sought no assistance in representing My nnocence, there was no investigator appointed to nvestigate on My behalf, there was no expert Witnesses sign to testify to the facts based upon their ability, eryone testifying was testifying for the State/D.A..

Attorney Mr. Hamlin was informed by Me of several cts/witnesses that would have helped to prove My nnocence, though he never called a single one.

 ˜rmore, all the Capital Cases are usually represented at least two Attorneys, once again, Mr. Hamlin was the ly one representing Me.

Hamlin was always unprepared at Motion hearings and en at My trial.

tice, Mr. Hamlin ineffectiveness according to Court cords Page 14 Line 3 and Line 4 and Also Line 11, he admitted was unprepared/Negligent,. If I/ONESELF mmy Lee Wilson was paying Mr. Hamlin the results ould have been different.

ould a Man be denied/deprived of his freedom for e rest of his Life because he could not afford lity or effective assistance of Counsel

1   cite for the Court is the State of Alabama versus

2   Rich 766 So.2d 143 which is a Supreme Court of

3   Alabama case.  And I apologize for not having the

4   entire text of the case with me.  But that case

5   was reversed on a writ of certiorari.  The gist of

6   the case on a convicted defendant who committed

7   only one killing of both felony murders violated

8   the double jeopardy.

9       THE COURT:  What says the State?

10       MR. GIBBS:  Having not read that case --

11       MR. HAMLIN:  I don't have the entire case.

12   It's lost off somewhere in my file.

13       MR. GIBBS:  Your Honor, I think under this

14   case from reading the brief commentary here the

15   defendant was convicted of two counts of felony

16   murder I guess as lesser included offenses of the

17   capital charges as indicted.  And under that those

18   do not require different proofs or different

19   elements.  And double jeopardy would be an issue

20   with regard to that.  I would merely refer the

21   Court to the case law in Alabama, more

22   specifically refer to Seritt, S-e-r-i-t-t, v State

23   647 So.2d Page 1, Alabama Criminal Appeals 1994,

24   Border v State cited at 711 So.2d 498, Alabama

25   Criminal Appeals 1997.  And in those cases they

Frances P. Looney, CSR, RPR

# CONCLUSION

/oneself Tommy Lee Wilson Was Convicted of

o__ 'tal Murder (2 Counts) base Solely upon the psychatric

__ility of the D.A (District Attorneys) to persuade the Jury

__ believe What they (D.A.) think happened.

__ere Was no evidence produced by D.A./State to Connect Me

__eself  Tommy Lee Wilson to the Crime, there Was no

__A evidence, No Eyewitnesses,. Witness Dexter Gibson

__stified that he has been threaten and Coerced by

__cal officials Pages 233-235,.

__tness Darcell Brown letter (Exhibit #3) to oneself

__mmy L. Wilson, Confirmation that I/oneself (Wilson)

__new nothing about the Crime, and that he (Brown) Was

__nder enormous pressure by his Attorneys on behalf

__f the D.A. (District Attorneys) to Lie on behalf/in Support

__ __he State/D.A.

__ Tommy Lee Wilson Am INNOCENT, Tommy Lee Wilson

#225500

__tate of ALABAMA

__S

__MMY LEE WILSON                CS# CC-00-74

riminal Law 1171.1(2.1)

> assess the prejudicial effect of a prosecutor's
: marks, an appellate court must consider the remarks
N context and assess their probable impact on the
jury.

: prosecutor's remarks compela reversal only if the
emarks so infected the trial with unfairness as to
Make the resulting conviction a denial of due process.
I.S.C.A. Const. Amend. 14.

# Black's Law Dictionary

Sufficiency of evidence to Support verdict.
This phrase in a motion for new trial, or for judgment
Notwithstanding the Verdict, means that there is
Some evidence, but not enough in light of the
Evidence to the Contrary to Support a Verdict.
Arnold v. Haskins, 347 Mo. 320, 147 S.W. 2d 469, 472.
It means that there is no evidence which ought
reasonably Satisfy jury that fact to be proved is
Established.

uppl.-Rule 32, Alabama Rules of Criminal Procedure
(?),(3),(4),(5)

lso,

uppl. Facts/Grounds
Pages 112, Waiver, Support defendant
Tommy Lee Wilson Was not Mirandized, See Exhibit #2, Pg.112



FILED IN OFFICE THIS
FILED IN OFFICE THIS
3-24-04
CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA

state of Alabama
s
                    CS# CC-00-74
ommy Lee Wilson

                              3/22/2004
            Tommy Lee Wilson #225500
            1000 St. Clair Rd.
            Springville, AL. 35146-5582
            G-2-B-219

A Copy/Court Copy

55

16 L. Ed. 2d. 694

Evidence §682-Confession

[co]ercion in obtaining confession from an accused
[ca]n be mental as well as physical.

[Ev]idence §683-Confession While in Custody
Even though not involuntary in traditional terms, a
[co]nfession is involuntary where it is obtained by law
[en]forcement officer by way of incommunicado interrogation,
an environment created for no purpose other than to
[su]bjugate the individual to the will of his examiner.

[Evi]dence §683-Statements made in Custody-voluntariness
[U]nless adequate protective devices are employed to
[dispel] the compulsion inherent in custodial surroundings,
[no] statement obtained from a person held for interrogation
[by] a law enforcement officer can truly be the product of
[his] free choice.

[Cri]minal Law §74; Habeas Corpus §21-involuntary confession-
[pos]tconviction remedies
[W]hether his conviction was in a federal or State court,
[d]efendant may secure a postconviction hearing based on
[the] alleged involuntary character of his confession, provided
[he] meets the procedural requirements.

28 USCS §2106

I. Criminal Proceedings

where, on appeal of 2 men Convicted of murder in
State Court, one for hiring other to commit murder,
Supreme Court of United States reversed Conviction
of one who actually Committed murder on basis of
Coerced Confession, proper procedure is to vacate Conviction
of one who did not make Confession, as his Conviction was
Also predicated upon Coerced Confession of one who
Actually Committed murder. Ashcraft v. Tennessee (1944)
322 US 143, 88 L Ed 1192, 64 S Ct 921.

Suppl.-Rule 32, Alabama Rules of Criminal Procedure
1.(9)



Also,
ineffective Counsel,
Furthermore, all the Capital Cases are usually
Represented by at least two Attorneys, once again,
Mr. Hamlin Was the only one representing Me.


Note; Attached hereto is a Copy the prison Newsletter
     Here at St. Clair Where I am imprisoned.
     this Same Mr. Don Hamlin that represented Me
     Has another Attorney asisting him in representing
     Ronald Stallworth's Capital Case.
     Why Was I/oneself Tommy Lee Wilson denied
     Effective asistance of Counsel?

ite of Alabama
                    CS# CC-00-74
                                        5/5/2004
my Lee Wilson                    Tommy Lee Wilson #225500
                                   1000 St. Clair Rd.
                                 Springville, AL. 35146-5582
                                    G-2-B-219

58

*Sw 7*

# N E W S L E T T E R
## 1-6-04

## ATTORNEY APPOINTMENT FOR 1-7-04:

Attorney Don Hamlin and Lyle Harmon to see inmate Ronald Stallworth @ 2:30PM.

## RED CROSS BLOOD DRIVE:

There will be a Red Cross Blood Drive on 1-7-04 from 8AM to 1:30PM. The Red Cross Bus will be in the front parking lot. Red Cross urges everyone to give because they are in dire need of all blood types! You never know whose life you may save by donating blood. There will be Red Cross t-shirts available. Employees who give blood will be given 2-hours of administrative leave.

## LEAVE REQUEST SLIPS/FORMS:

Be advised, staff are to use the "old" leave request forms (that come in pads) **prior** to using the "new" leave request forms that must be copied. We need to exhaust all forms that have already been purchased.

## MILITARY STAFF:

There seems to be a chronic problem with officers not providing military verification forms after the completion of military duty. I expect all officers to provide Ms. Hawkins with the military verifications as required in AR 200. Thank you for your cooperation.        Warden Ralph Hooks

IN THE CIRCUIT COURT OF CHAMBERS COUNTY, ALABAMA

State of Alabama            (
                                  )
        v.                   (      Case No. CC 2000-074
                                  )
Tommy Lee Wilson       (

## ORDER

After trial before a duly impaneled and sworn jury defendant was found guilty of Capital Murder. Thereafter he was sentenced to serve life imprisonment without possibility of parole. His conviction was affirmed on appeal to the Alabama Court of Criminal Appeals and the Supreme Court of Alabama denied certiorari. Defendant has now filed a petition under Rule 32 of the Alabama Rules of Criminal Procedure.

The court has closely examined the defendant's petition and his argument in support thereof. It is clear from the petition and argument that each and every ground raised and argued could have been raised with the Court of Criminal Appeals. It should be noted that defendant was not represented by trial counsel on appeal.

It is Therefore Ordered, Adjudged, and Decreed that defendant's Petition For Relief From Conviction Or Sentence is denied.

A copy of this Order shall be sent to the District Attorney for the Fifth Judicial Circuit and to defendant at his place of incarceration.

Done this the 19th day of May 2005.

_____
Circuit Judge

FILED IN OFFICE THIS

MAY 1 9 2005

CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA

In the Circuit court of <u>Chambers</u>

County, Alabama

<u>Tommy</u> Lee Wilson<sup></sup>

Petitioner, Pro Se,

vs.

Case No. <u>CC 2000-074</u>

State of Alabama,

Respondent,

## <u>Notice of Appeal to the Court of Criminal Appeals</u>

## <u>of Alabama</u>

Notice is hereby given that <u>Tommy Lee Wilson</u>, petitioner pro se, appeals to the above named court from the judgment entered in this case on the <u>26th</u> day of <u>May</u>, 20 <u>05</u>, denying his Rule 32 post conviction petition.

FILED IN OFFICE THIS

JUN - 2 2005

CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA

Respectfully Submitted,

Tommy L. Wilson

Petitioner, Pro Se

61

CERTIFICATE OF SERVICE

I hereby certify that I have this _26th_ day of _May_____, 200_5_.

served a copy of the foregoing, upon the following, by placing a copy of the

same in the U.S. mail, postage prepaid and properly addressed:

Mr. Troy King, Atty.
Gen. Office, 11 South
Union Street
Montgomery, Ala. 36130


Alabama Court Of Criminal Appeals

300 Dexter Ave.

Post Office Box 301-1555

Montgomery, Alabama   36130-1555

Charles W. Story
Circuit Clerk
Chambers County Courthouse
LaFayette, Alabama 36862

Respectfully Submitted,

Tommy L. Wilson
AIS #225500
G-1-C-129
1000 St. Clair Rd.
Springville, AL. 35146-5582

| State of Alabama Unified Judicial System<br>Form ARAP- 26 (front)   8/91 | COURT OF CRIMINAL APPEALS<br>DOCKETING STATEMENT | Criminal Appeal Number<br>_____ - _____ |
|---|---|---|

## A. GENERAL INFORMATION:

☒ CIRCUIT COURT  ☐ DISTRICT COURT  ☐ JUVENILE COURT OF    Chambers    COUNTY

Tommy Lee Wilson , Appellant

V.  ☒ STATE OF ALABAMA  ☐ MUNICIPALITY OF _____

| Case Number<br>CC/2000-074 | Date of Complaint or Indictment | Date of Judgment/Sentence/Order |
|---|---|---|
| Number of Days of Trial/Hearing<br>Days | Date of Notice of Appeal<br>Oral: | Written: |

Indigent Status Requested: ☒ Yes  ☐ No          Indigent Status Granted: ☒ Yes  ☐ No

## B. REPRESENTATION:

Is Attorney Appointed or Retained?  ☐ Appointed  ☐ Retained.    If no attorney, will appellant represent self?  ☒ Yes  ☐ No

| Appellant's Attorney (Appellant if pro se) (Attach additional pages if necessary)<br>Tommy Lee Wilson#225500. GIC-129 | Telephone Number<br>N/a |
|---|---|
| Address<br>1000 St. Clair Road | City<br>Springville. | State<br>Ala. | Zip Code<br>35146-5582 |

## C. CODEFENDANTS: List each CODEFENDANT and the codefendant's case number.

| Codefendant | Case Number |
|---|---|
| Codefendant | Case Number |
| Codefendant | Case Number |

FILED IN OFFICE THIS

JUN - 2 2005

CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA

## D. TYPE OF APPEAL:  Please check the applicable block.

1 ☒ State Conviction      4 ☐ Pretrial Order          7 ☐ Juvenile Transfer Order  10 ☐ Other (Specify)
2 ☒ Post-Conviction Remedy  5 ☐ Contempt Adjudication     8 ☐ Juvenile Delinquency
3 ☐ Probation Revocation    6 ☐ Municipal Conviction      9 ☐ Habeas Corpus Petition

## E. UNDERLYING CONVICTION/CHARGE: Regardless of the type of appeal checked in Section D, please check the box beside each offense category for which the appellant has been convicted or charged as it relates to this appeal. Also include the applicable section of the Code of Alabama for State convictions.

1 ☐ Capital Offense - § 13A/5/40   6 ☐ Trafficking in Drugs - § _____   11 ☐ Fraudulent Practices - § _____
2 ☐ Homicide - § _____           7 ☐ Theft - § _____                 12 ☐ Offense Against Family - § _____
3 ☐ Assault - § _____            8 ☐ Damage or Intrusion              13 ☐ Traffic - DUI - § _____
4 ☐ Kidnapping/Unlawful               to Property - § _____           14 ☐ Traffic - Other - § _____
    Imprisonment -§ _____        9 ☐ Escape - § _____                15 ☐ Miscellaneous (Specify): _____
5 ☐ Drug Possession - § _____   10 ☐ Weapons/Firearms - § _____         _____ - §

## F. DEATH PENALTY:

Does this appeal involve a case where the death penalty has been imposed?  ☐ Yes  ☒ No

## G. TRANSCRIPT:

1. Will the record on appeal have a reporter's transcript?  ☐ Yes  ☒ No
2. If the answer to question "1" is "Yes," state the date the Reporter's Transcript Order was filed.  "My Direct Appeal"
   (Date)
3. If the answer to question "1" is "No":
   (a)  Will a stipulation of facts be filed with the circuit clerk?  ☐ Yes  ☒ No
   (b)  Will the parties stipulate that only questions of law are involved and will the trial court certify the questions?  ☐ Yes  ☒ No

| State of Alabama Unified Judicial System Form ARAP- 1C     8/91 | REPORTER'S TRANSCRIPT ORDER -- CRIMINAL<br>See Rules 10(c) and 11(b) of the<br>Alabama Rules of Appellate Procedure (A.R. App. P.) | Criminal Appeal Number |
|---|---|---|

TO BE COMPLETED BY COUNSEL FOR THE APPELLANT OR BY THE APPELLANT IF NOT REPRESENTED AND FILED WITH THE WRITTEN NOTICE OF APPEAL OR FILED WITHIN 7 DAYS AFTER ORAL NOTICE OF APPEAL IS GIVEN.

☒ CIRCUIT COURT   ☐ DISTRICT COURT   ☐ JUVENILE COURT OF _____ Chambers _____ COUNTY

V. ☒ STATE OF ALABAMA   ☐ MUNICIPALITY OF _____ Tommy Lee Wilson _____, Appellant

| Case Number<br>CC/2000-074 | Date of Judgment/Sentence/Order |
|---|---|
| Date of Notice of Appeal<br>Oral:            Written:   Yes | Indigent Status Granted:<br>☒ Yes   ☐ No |

**PART 1. TO BE SIGNED IF THE APPEAL WILL NOT HAVE A COURT REPORTER'S TRANSCRIPT:**
I CERTIFY THAT NO REPORTER'S TRANSCRIPT IS EXPECTED AND THAT THE RECORD ON APPEAL SHALL CONSIST OF THE CLERK'S RECORD ONLY. IF THE APPEAL IS FROM DISTRICT COURT OR JUVENILE COURT, I ALSO CERTIFY (1) THAT A STIPULATION OF FACTS WILL BE INCLUDED IN THE CLERK'S RECORD AND THAT THE APPELLANT WAIVES HIS RIGHT TO A JURY TRIAL IF SO ENTITLED; OR (2) THAT THE PARTIES HAVE STIPULATED THAT ONLY QUESTIONS OF LAW ARE INVOLVED AND THAT THE QUESTIONS WILL BE CERTIFIED BY THE JUVENILE/DISTRICT COURT FOR INCLUSION IN THE CLERK'S RECORD (SEE RULE 28(A)(1), ALABAMA RULES OF JUVENILE PROCEDURE, AND §12-12-72, CODE OF ALABAMA 1975).

Signature _____ Date May 26th, 2005 _____ Print or Type Name Tommy Lee Wilson

**PART 2. DESIGNATION OF PROCEEDINGS TO BE TRANSCRIBED.** Request is hereby made to the court reporter(s) indicated below for a transcript of the following proceedings in the above referenced case (see Rule 10(c)(2), Alabama Rules of Appellate Procedure (A.R. App. P.)).

MARK PROCEEDINGS REQUESTED:                                              COURT REPORTER(S)

A. ☐ TRIAL PROCEEDINGS - Although this designation will include the judgment and sentence proceedings, a transcript of the organization of the jury and arguments of counsel must be designated separately.

B. ☐ ORGANIZATION OF THE JURY - This designation will include voir dire examination and challenges for cause. Note that in noncapital cases the voir dire of the jury will not be recorded unless the trial judge so directs. (See Rule 19.4, ARCrP.)

C. ☐ ARGUMENTS OF COUNSEL - Note that in noncapital cases the arguments of counsel will not be recorded unless the trial judge so directs. (See Rule 19.4, ARCrP.)

IN ADDITION TO ANY PROCEEDINGS DESIGNATED ABOVE, SPECIAL REQUEST IS HEREBY MADE TO INCLUDE THE FOLLOWING PROCEEDINGS IN THE REPORTER'S TRANSCRIPT PORTION OF THE RECORD ON APPEAL (ATTACH ADDITIONAL PAGES IF NECESSARY):

ADDITIONAL PROCEEDINGS REQUESTED                    DATE                    COURT REPORTER(S)

D. Rule 32 petition and "Amend/Supplements"

E. _____

F. _____

G. _____

FILED IN OFFICE THIS
JUN - 2 2005
CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY
ALABAMA

IMPORTANT NOTICE: The court reporter who reported the proceedings for which a transcript is requested must be identified on this form to be effective. Additionally, it is important to note that the appellant may not be permitted to raise any issue on appeal relating to any proceedings in the case that are not specifically designated on this form for inclusion in the reporter's transcript. A general designation such as "all proceedings" is not sufficient. (See Rule 10(c)(2), A.R.App.P.)

**PART 3. MUST BE SIGNED IF THE APPEAL WILL HAVE A COURT REPORTER'S TRANSCRIPT:**
I CERTIFY THAT I HAVE DISTRIBUTED THIS FORM AS SET OUT BELOW. I ALSO CERTIFY (1) THAT I HAVE MADE SATISFACTORY FINANCIAL ARRANGEMENTS WITH EACH COURT REPORTER LISTED ABOVE FOR PREPARING HIS OR HER PORTION OF THE REPORTER'S TRANSCRIPT HEREIN REQUESTED; OR (2) THAT THE APPELLANT PROCEEDED AT TRIAL AS AN INDIGENT AND THAT THAT STATUS HAS NOT BEEN REVOKED; OR, (3) THAT THE APPELLANT HAS BEEN GIVEN PERMISSION TO PROCEED ON APPEAL IN FORMA PAUPERIS.

Signature _Tommy L. Wilson_   Date May 26th, 2005   Print or Type Name Tommy Lee Wilson

DISTRIBUTION: Original filed with Clerk of Trial Court

```
ACR371                    ALABAMA JUDICIAL DATA CENTER
            NOTICE OF APPEAL TO THE ALABAMA COURT OF CRIMINAL APPEALS
                          BY THE TRIAL COURT CLERK
                 IN THE CIRCUIT COURT OF CHAMBERS COUNTY
      ATE OF ALABAMA VS WILSON TOMMY LEE           JUDGE: RAY D. MARTIN
```

| APPEAL DATE: 06/02/2005

| INDIGENCY STATUS:
|   GRANTED INDIGENCY STATUS AT TRIAL COURT:         __X__ YES   _____ NO
|   APP. TRIAL COUNSEL PERMITTED TO W/D ON APPEAL:   __X__ YES   _____ NO
|   INDIGENT STATUS REVOKED ON APPEAL:               __X__ YES   __√__ NO
|   INDIGENT STATUS GRANTED ON APPEAL:               _____ YES   __X__ NO

| DEATH PENALTY: NO

| APPEAL TYPE: RULE 32 PETITION

| THIS APPEAL IS FROM AN ORDER DENYING A PETITION (I.E.: RULE 32 PETITION,
| WRIT OF HABEAS CORPUS, ETC) OR FROM ANY OTHER ISSUED BY THE TRIAL JUDGE.

| CO/CASE NUMBER: 12/CC 2000 000074.60

| ORDER ENTERED(DATE): 05192005 PETITION: __DISMISSED  X DENIED  __GRANTED

| POST-JUDGMENT MOTIONS FILED:    DT FILED      DT DENIED      CON BY AGREE
| ___ MOTION FOR NEW TRIAL
| ___ MOTION FOR JUDG. OF ACQUIT  _____      _____      _____
| ___ MOTION TO W/D GUILTY PLEA   _____      _____      _____
| ___ MOTION FOR ATTY TO W/DRAW   _____      _____      _____
| ___ OTHER _____       _____      _____      _____

| COURT REPORTER(S):
| ADDRESS:                        _____
|                                 _____

| APPELLATE COUNSEL #1:           VARNER GREGORY MICHAEL
|  ADDRESS:                       P O BOX 338
|                                 ASHLAND              AL  36251
| PHONE NUMBER:                   #56371-5464

| APPELLATE COUNSEL #2:
| ADDRESS:                        _____
|                                 _____
| PHONE NUMBER:                   _____

| APPELLANT (PRO SE):             WILSON TOMMY LEE
| ADDRESS:                        G1-C-129
|                                 SPRINGVILLE    ,  AL  351460000
| AIS #:                          000225500

| APPELLEE (IF CITY APPEAL):
| ADDRESS:                        _____
|                                 _____

```
I CERTIFY THAT THE INFORMATION PROVIDED              OPERATOR: CHS
ABOVE IS ACCURATE TO THE BEST OF MY               PREPARED 06/02/2005
KNOWLEDGE AND I HAVE SERVED A COPY OF
THIS NOTICE OF APPEAL ON ALL PARTIES TO
THIS ACTION ON THIS 2 DAY OF June  05         CIRCUIT COURT CLERK
```

| State of Alabama<br>Unified Judicial System<br>Form ARAP- 14    11/91 | CERTIFICATE OF COMPLETION AND<br>TRANSMITTAL OF RECORD ON<br>APPEAL BY TRIAL CLERK | Appellate Case Number |
|---|---|---|

TO: THE CLERK OF
    THE COURT OF CRIMINAL APPEALS OF ALABAMA

DATE OF
NOTICE OF APPEAL: JUNE 2, 2005

APPELLANT

    TOMMY LEE WILSON

v. STATE OF ALABAMA

I certify that I **have this** date completed and transmitted herewith to the appellate court the record on appeal by assembling in (a single volume of ____66____ pages) (_____ volumes of 200 pages each and one volume of _____ pages) the clerk's record and the reporter's transcript and that one copy each of the record on appeal has been served on the defendant and the Attorney General of the State of Alabama for the preparation of briefs.

I certify that a copy of this certificate has this date been served on counsel for each party to the appeal.

Dated this ___23___ day of ____JUNE____ • 19 _2005_

CHARLES W. STORY
Circuit Clerk

CHAMBERS COUNTY, ALABAMA

Notice: This unpublished memorandum should not be cited as precedent. See Rule 54, Ala.R.App.P. Rule 54(d), states, in part, that this memorandum "shall have no precedential value and shall not be cited in arguments or briefs and shall not be used by any court within this state, except for the purpose of establishing the application of the doctrine of law of the case, res judicata, collateral estoppel, double jeopardy, or procedural bar."

# Court of Criminal Appeals

State of Alabama
Judicial Building, 300 Dexter Avenue
**P. O. Box 301555**
**Montgomery, AL 36130-1555**



**H.W."BUCKY" McMILLAN**
Presiding Judge
**SUE BELL COBB**
**PAMELA W. BASCHAB**
**GREG SHAW**
**A. KELLI WISE**
Judges

Lane W. Mann
**Clerk**
Sonja McKnight
**Assistant Clerk**
**(334) 242-4590**
**Fax (334) 242-4689**

## MEMORANDUM

CR-04-1746                    Chambers Circuit Court CC-00-74.60

Tommy Lee Wilson v. State

COBB, Judge.

Tommy Lee Wilson appeals from the circuit court's summary dismissal of his Rule 32, Ala. R. Crim. P., petition. The petition sought post-conviction relief from his October 3, 2002, conviction for two counts of capital murder and sentences of life in prison without the possibility of parole. His convictions were affirmed on direct appeal. See Wilson v. State, (CR-02-0852, June 20, 2003) 880 So. 2d 513 (Ala. Crim. App. 2003)(Table). The certificate of judgement was issued on November 7, 2003. Wilson's Rule 32 petition was timely filed on January 26, 2004. The allegations contained in the petition are confusing and disorganized, sometimes to the point of being unintelligible and incoherent. Thus, as best

1



EXHIBIT
*6-1*

we can discern, the following claims were presented in Wilson's petition.

1.) There was insufficient evidence to support a finding of guilt.

2.) Co-defendant Darcell Brown conspired with the district attorney to fabricate a case against the petitioner.

3.) Darcell Brown's testimony should have been impeached.

4.) Petitioner was not advised of his <u>Miranda v. Arizona</u> rights.

5.) Because there was only one death, it was a double jeopardy violation to charge petitioner with two crimes.

6.) Witness Dexter Gibson admitted that he was threatened and coerced.

7.) Witness Darcell Brown admitted that he was coerced by the District Attorney to lie about the petitioner.

8.) Petitioner's statement was illegally obtained and used against him. See, number 4 above.

9.) Trial counsel was ineffective for failing to object to the illegally obtained statement.

10.) A letter written by Darcell Brown confirms that he lied about the petitioner's involvement in the crime.

11.) Trial counsel was ineffective in presenting the facts of the case.

12.) Trial counsel was ineffective in investigating the defense and preparing for motions, hearings and trial.

2

13.)    Improper and prejudicial remarks by the prosecutor persuaded the jury of petitioner's guilt.

14.)    Petitioner was denied effective representation because petitioner only had one attorney instead of two.

The circuit court summarily dismissed the petition on May 19, 2005, on the grounds that all the claims contained in the petition could have been presented on direct appeal. See, Rule 32.2(a)(4), Ala. R. Crim. P.    In reviewing the circuit court's denial of King's petition, we will affirm the circuit court "[i]f the circuit court is correct for any reason, even though it may not be the stated reason ... . See Roberts v. State, 516 So. 2d 936 (Ala.Cr.App. 1987)." Reed v. State, 748 So. 2d 231, 233 (Ala. Crim. App. 1999); Ex parte City of Fairhope, 739 So. 2d 35, 39 (Ala. 1999).

Initially, we find that Wilson's petition has not sufficiently pleaded facts necessary to establish any of his claims as we discern them. Thus, his petition failed because it did not satisfy either the burden of pleading requirements of Rule 32.3, Ala. R. Crim. P., or the specificity requirements of Rule 32.6(b), Ala. R. Crim. P.

Notwithstanding our finding the pleadings in the petition were insufficient, we note that Wilson has presented five specific allegations of ineffective assistance of counsel on appeal. Regarding review of these issues Wilson argues that the circuit court's summary dismissal was in error because, although Wilson had new counsel appointed to pursue his direct appeal, his original trial counsel filed his motion for new trial and trial counsel did not claim ineffectiveness against himself. Thus, according to Wilson, this Rule 32 was his first opportunity to pursue his claims that trial counsel was ineffective.

Without addressing Wilson's claim that this petition represents his first opportunity to challenge counsel's performance, we note that two claims he now raises on appeal were not sufficiently pleaded in his petition. "[A]ttempts to include more specific facts regarding ... claims of ineffective assistance of counsel in ... brief to this Court ... are not properly before this Court for review because ...

3

[the new facts were] not include[d] ...in [the] original petition before the circuit court.") Bearden v. State, 825 So. 2d 868, 872 (Ala. Crim. App. 2001). The other three claims are presented for the first time. "An appellant cannot raise an issue on appeal from the denial of a Rule 32 petition which was not raised in the Rule 32 petition." Arrington v. State, 716 So.2d 237, 239 (Ala. Crim. App. 1997). We also note, as discussed below, these claims are not in compliance with Rule 28, Ala. R. App. P., and thus, are waived from appellate review. Thus, Wilson is not entitled to appellate review of these claims.

Wilson also asserts on appeal that newly discovered evidence exists to prove that witness Darcell Brown testified falsely against Wilson. Initially, we note that Rule 28(a)(10), Ala. R. App. P., requires that an argument contain "the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relied on." Wilson has presented no argument on appeal supporting this allegation. Noncompliance with Rule 28, Ala. R. App. P., amounts to a waiver of the argument on appeal. See Hamm v. State, [Ms. CR-99-0654, February 1, 2002] ___ So. 2d ___, ___ (Ala. Crim. App. 2002).

For the reasons stated above, the circuit court's summary dismissal of Wilson's Rule 32, Ala. R. Crim. P., petition is affirmed.

AFFIRMED.

McMillan, P.J., and Shaw, and Wise, JJ., concur. Baschab, J., concurs in the result.

4

# THE STATE OF ALABAMA - - JUDICIAL DEPARTMENT
# THE ALABAMA COURT OF CRIMINAL APPEALS

**CR-04-1746**

Tommy Lee Wilson v. State of Alabama  (Appeal from Chambers  Circuit Court:
CC00-74.60)

## CERTIFICATE OF JUDGMENT

WHEREAS, the appeal in the above referenced cause has been duly submitted and
considered by the Court of Criminal Appeals; and

WHEREAS, the judgment indicated below was entered in this cause on October
21st 2005:

### Affirmed by Memorandum.

NOW, THEREFORE, pursuant to Rule 41 of the Alabama Rules of Appellate
Procedure, it is hereby certified that the aforesaid judgment is final.

**Witness. Lane W. Mann, Clerk
Court of Criminal Appeals, on this
the 13th day of January, 2006.**

**Clerk
Court of Criminal Appeals
State of Alabama**

**cc:** Hon. Ray D. Martin, Circuit Judge
Hon. Charles W. Story, Circuit Clerk
Tommy Lee Wilson, Pro Se
Yvonne A. H. Saxon, Asst. Atty. Gen.

EXHIBIT
B-2
PENGAD 800-631-6989